RAYMOND ET AL., PLAINTIFFS IN ERROR, v. THE PEOPLE, ETC., DEFENDANTS IN ERROR.

1. CITY WARRANTS—STATUTE AS TO FORM OF, MANDATORY.

Section 22, art 3, of the charter of the city of Denver (Sess. Laws, 1885, p. 93), providing that every warrant drawn upon the city treasury shall show, among other things, the purpose for which it is issued, *held*, mandatory.

2. CITY WARRANTS—WHEN VOID.

The provisions of the statute as to the form and substance of a city warrant being mandatory, a warrant issued without a compliance with its requirements is void upon its face. (Reed, J., dissenting.)

3. FORGERY—VOID WARRANT.

Forgery cannot be predicated upon an instrument which, by reason of non compliance with statutory requirements, is void upon its face. (Reed, J. dissenting.)

4. SPECIAL COUNSEL FOR THE PEOPLE.

The trial court may in the exercise of sound discretion appoint one or more attorneys to assist the district attorney in the prosecution of criminal cases, and its action in this respect will not be reviewed except where a clear abuse of discretion is made apparent.

*Error to the District Court of Arapahoe County.*

THE defendants, George R. Raymond and James P. Hadley, were indicted for forging and uttering an alleged city warrant. There were twelve counts in the indictment and each count substantially sets forth, in terms and figures, the warrant which it is alleged was forged and uttered. The warrant is in the following words and figures:

"Auditor's Office, City of Denver.   No. E. 1974.

"Treasurer of the City of Denver.   Pay to Joslin & Son or order $3.50, three 50 — dollars, out of any money in the treasury not otherwise appropriated, for ————, and charge the same to miscellaneous fund; and this shall be your voucher.   By order of the city council of date Jul. 31, 1890.

"Issued Aug. 1, 1890.

"[CITY SEAL.]                    Countersigned by
  "Attest:                         A. A. McKNIGHT,
"W. H. MILBURN,                    City Auditor.
    "City Clerk.
                                  ————————,
"————————,                              Deputy.
    "Deputy.                    WOLFE LONDONER,
                                       "Mayor."

The indictment charges that the defendants did feloniously and falsely alter the said warrant for the payment of money, by then and there feloniously and falsely writing in and upon the said warrant for the payment of money the figures "30" immediately preceding the figures "3.50," and writing the words "three hundred" immediately preceding the word "three," so that the said warrant for the payment of money thereby became, and then and there was, of the tenor following:

"Auditor's Office, City of Denver.   No. E. 1,974.

"Treasurer of the City of Denver: Pay to Joslin & Son or order $303.50, three hundred three 50 — dollars out of any money in the treasury not otherwise appropriated,

for ———, and charge the same to miscellaneous fund; and this shall be your voucher.   By order of the city council of date Jul. 31, 1890.

"Issued Aug. 1, 1890.

"[CITY SEAL.]                           Countersigned by
  "Attest:                                      A. A. McKNIGHT,
"W. H. MILBURN,                                    City Auditor.
   "City Clerk.
                                                 ——— ———,
"———,                                            Deputy.
    "Deputy.                        WOLFE LONDONER,
                                                 "Mayor."

—with intent then and there to damage and defraud the city of Denver.

The third count of the indictment charges the felonious uttering and passing, as true and genuine, the warrant so feloniously forged and altered and counterfeited for the payment of money.   Each and every other count in the indictment is substantially similar, and it is sufficient to say that they embrace the words and figures of the warrant above recited.   The indictment was returned into court by the grand jury, signed by the district attorney, I. N. Stevens, and by James G. Belford and Caldwell Yeaman, special counsel, and was duly indorsed "A true bill" by John L. Dailey, foreman of the grand jury.

Before pleading to the indictment, defendants interposed a motion to quash, in which it is recited that all the proceedings before the grand jury, including the taking of testimony, were controlled by the special counsel, Belford and Yeaman, neither of whom were then and there the district attorney of such district, and neither of whom were then and there duly appointed and qualified district attorneys or deputy district attorneys, and neither of whom had any authority or lawful right to appear as attorney or representative of said people in taking the testimony before the said grand jury while said grand jury were deliberating upon said indictment, and neither of whom then and there duly appointed were qual-

ified in any way or manner to represent the people as required by statute, and neither of whom had been employed or appointed by the county commissioners of any county to appear and prosecute; that I. N. Stevens, Esq., the district attorney, was the duly elected and qualified district attorney for the second judicial district, and that he or his deputies did not appear before the grand jury which heard the testimony in said cause and presented said indictment; that he was neither sick nor absent nor interested in the case, nor incapacitated in any way or manner from discharging or performing the duties of said office, and had not declined or refused to prosecute said cause, and that the appointment of said Belford and Yeaman as special counsel by the court was without authority or warrant of law. The defendants also challenged the array of the grand jury, on the ground that the same had not been properly drawn, selected and impaneled. The motions and challenges were met in proper form by the people and overruled by the court. Thereafter special demurrers to the indictment were interposed, which were overruled. The cause was tried to a jury, and resulted in a general verdict of guilty. Motions for a new trial and in arrest of judgment were overruled, and the defendants sentenced to hard labor in the penitentiary for a period of five years. To reverse the judgment of the court below this writ of error is prosecuted.

Thirty-seven errors are assigned upon the record, but for the purposes of this opinion they can be embraced under five heads: First, the insufficiency of the indictment; second, the legality and authority of special counsel to appear before the grand jury, and in the prosecution of the case; third, the error of the court in admitting testimony on the part of the plaintiff over the objections of defendants; fourth, error of the court in admitting various exhibits offered by the people in evidence over the objections of defendants, and in permitting the jury to take the various exhibits when they retired to consider their verdict; fifth, error in the instructions. The cause was submitted upon briefs and oral argument.

Mr. F. C. GOUDY, Mr. A. M. STEVENSON, Mr. S. B. BERRY and Mr. C. D. MAY, for plaintiffs in error.

Mr. JOSEPH H. MAUPIN, attorney general, Mr. CALD-WELL YEAMAN, Mr. JAMES B. BELFORD, Mr. THOMAS WARD, Jr., and Mr. H. B. BABB, of counsel.

RICHMOND, P. J., after stating the facts, delivered the opinion of the court.

The principal contention of defendants' counsel is that the indictment is insufficient in this : That the warrant alleged to have been forged and altered was void upon its face, and that forgery could not be predicted upon a void instrument; that special counsel, Belford and Yeaman, not being district attorneys or deputies, and not having been employed by the county commissioners of Arapahoe county, or any other county, but having been selected by the court as special counsel, were clearly without authority to appear before the grand jury, and in the prosecution of the defendants after presentment by indictment; that the court erred in admitting in evidence a large number of warrants of the city, some forged and others genuine. These are the three principal questions that were discussed before us in the oral argument.

The main and most important question, and the one with which we have had the greatest difficulty in reaching a conclusion, is the first. The testimony in the case shows that George R. Raymond was deputy city auditor; that James P. Hadley was deputy city treasurer; that J. Jay Joslin & Son had a claim against the city for merchandise furnished to the extent of $3.50, which claim was duly presented to the city council and allowed, and thereafter a warrant was drawn for the sum of $3.50, but in said warrant the purpose for which the appropriation was made or the warrant drawn was not included in the warrant; that thereafter the defendants, Hadley, Raymond, and one Milburn, the then city clerk, altered the warrant by inserting the figures " 30 " and

the words "three hundred" in the said warrant, and subsequently drew the entire sum of $303.50 from the treasury of the city. It is insisted that the failure of the warrant to show on its face the purpose for which it was drawn renders it absolutely void, and consequently that no indictment for forgery can be predicated upon it.

I will divide this last proposition into two parts : First. Was the alleged warrant void upon its face ? Second. If void, was it a subject of forgery ?

Section 22, art. 3, of the city charter of Denver (Sess. Laws, 1885) provides as follows : " No money shall be paid out by the city treasurer for any purpose, except upon warrants drawn upon him by order of the city council and signed by the mayor, countersigned and registered by the auditor, and attested by the clerk ; and every such warrant shall *show on its face* the date of its issue, the date of the order of the city council, to whom and for what purpose issued, and from what fund payable." It will be observed that the warrant upon which the charge of forgery is predicated omits to state for what purpose it was issued ; and, in order to determine the validity or invalidity of this warrant, it is necessary to determine whether the provisions of the statute above recited are mandatory ; and, before proceeding to the discussion of this question, it may be well to theorize as to the object of the legislature in providing for a specific recital in the warrant of the purpose for which it was issued. This provision of the statute is as important as any of the other enumerated requisites of a warrant. If we can omit the purpose for which it is issued, why can we not omit the signature of the mayor, the date of the order of the city council, to whom payable, and from what fund payable ? The statute says it shall show on its face the purpose. The object of the legislature in providing for this insertion in the warrant, it occurs to me, was, among other things, that the treasurer might be advised of the fact that the claim for which the warrant was directed to be issued was one for which the moneys of the city could be legitimately appropriated. It must be con-

ceded that, should a warrant be drawn enumerating on its face an illegitimate purpose,—one for which the city had no right to expend money or to appropriate money,—the treasurer would be wholly unwarranted in disbursing the funds of the city in payment thereof. The reports are full of cases where it has been held that appropriations were *ultra vires*, and that a city should be enjoined from such expenditures. I could recite innumerable instances where a city, a county and a school district have deemed it prudent and wise to aid in enterprises of a private nature, which might be conceded would be of public benefit, yet appropriations for such purposes have been held *ultra vires*. If the warrant upon its face had shown such an illegitimate purpose, can it be contended that a treasurer would be warranted in the payment of it? If this be true, then the failure to specify the purpose is equally fatal. The lack of this information would justify the treasurer in refusing payment, and information that would bring to his mind that a warrant was for an illegitimate purpose would be equally a justification for the refusal of payment.

The basis of this discussion is fully supported by the cases which have passed on this and similar phases of the subject-matter of this inquiry.

In the case of *Merkel v. Berks Co.*, 81 Pa. St. 505, it was held that the directors and inspectors of the poor and prison of Berks county had no right to draw orders on the county treasurer for donations for benevolent purposes. On the trial of the case, Woodward, P. J., rendered an opinion, in the course of which he said : " Among other duties imposed on the county treasurer is that requiring him to disburse the moneys belonging to the prison, on orders drawn on him by the board of inspectors, necessary for the support of the poor. Moneys passing into his custody are such as shall be necessary for keeping, furnishing and maintaining the prison, and necessary for the support of the poor. To these purposes the public funds are destined. To provide for these purposes, the directors and inspectors are authorized to disburse the

funds by drawing orders which it is the duty of the treasurer to pay. Orders appropriating money to other purposes are illegal, and, if the treasurer has knowledge or means of knowledge of their illegality, it is his duty to refuse to pay them when they are presented. He is bound to know the extent and limit of the authority conferred upon him by the law under which he has accepted his office. In this case express notice was given him that the orders were drawn for none of the purposes specified in the acts of the assembly. Upon their face they were declared to be donations. The directors and inspectors had no more right to draw them, and the treasurer was no more justified in paying them, than if they had purported to be given to satisfy the gambling debt of a pauper, or to buy a prisoner a horse. * * * Municipal officers are held to strict accountability." On the removal of the record to the supreme court of Pennsylvania, it was held that "the orders paid by the treasurer of the county were illegal on their face, and therefore brought home notice to him of the want of authority in the directors of the poor to order the payment."

It seems to me that the supreme court of this state has practically settled this question in the case of *Traveler's Ins. Co. v. Denver*, 11 Colo. 435, wherein the identical section of the city charter was considered. There it is said that "these requirements as to what the warrant shall state are mandatory, and a warrant which does not comply with these requirements in its statements does not create any liability against the city, and is not evidence of a debt against it." But it is claimed this is *obiter dicta*. I cannot agree with the contention in this particular. I think it was essential to the decision of that case, but nevertheless it is a declaration, and indicates a conclusion of the supreme court of this state upon this question. It may be said, with considerable force, that courts are not bound to follow the mere declarations in opinions not necessary to the decision; yet I am inclined to the opinion that, if it was but an expression and wholly unnecessary, it still is a correct legal conclusion; or,

as Justice Miller says, "*obiter dicta* * * * are those obser-
vations thrown out by the court in delivering its opinions
which, though in themselves valuable as statements of prin-
ciples, and often sound principles, are not involved in the
case before them, and therefore are to be treated merely as
the suggestion of the judge, and not as the decision of the
court. Very much of what is presented to the court as au-
thority in the hearing of a case is of this character, and while
it is not decisive, and does not carry the weight of a direct
decision of the court in the case, it cannot be said to be
wholly useless, when the observations proceed from a dis-
tinguished judge of high authority, and whose opinions are
entitled to respect." Art. Amer. Law Review, April, 1889.

"The intention of the legislature should control absolutely
the action of the judiciary. Where that intention is clearly
ascertained, the courts have no other duty to perform than
to execute the legislative will, without any regard to their
own views as to the wisdom or justice of the particular en-
actment. The means of ascertaining that intention are to
be found in the statute itself, taken as a whole and with all
its parts; in statutes on the same subject; antecedent juris-
prudence and legislation; contemporaneous and more recent
exposition; judicial construction and usage; and to the use
of these means, and these alone, the judiciary is confined."
Sedg. on Constr. Stat. and Const. Law, 325. "Mandatory
statutes are imperative. They must be strictly pursued.
Otherwise the proceeding which is taken ostensibly by virtue
thereof will be void. Compliance therewith, substantially,
is a condition precedent; that is, the validity of acts done
under a mandatory statute depends on a compliance with its
requirements. When a statute is passed authorizing a pro-
ceeding which was not allowed by the general law before,
and directing the mode in which an act shall be done, the
mode pointed out must be strictly pursued. It is the condi-
tion on which alone a party can entitle himself to the benefit
of the statute that its directions shall be strictly complied
with. Otherwise the steps taken will be void. * * * What

the law requires for the protection of the taxpayer, for ex-
ample, is mandatory, and cannot be regarded as directory
merely. * * * The special powers given to corporations, to
courts, or officers must be exercised with strict, substantial
adherence to all directions of the statute. * * * A body cor-
porate, created for a special purpose, with limited powers,
being a creature of the statute, must conform in its action
to the law of its creation, and acts done contrary to such reg-
ulations are simply void." Sutherland on Stat. Construction,
§§ 454, 455, 456. " Where the thing to be done concerns
and subserves rights both of the public and of individuals,
in all these an intent is to be inferred that, in using a per-
missive phrase, the legislature really meant to enjoin an im-
perative duty." Endlich on Interpretation of Statutes, sec.
312. The last recited rule is much stronger than one nec-
essary to cover the case presented here. The language of
the charter is not permissive. It says the warrant shall show
on its face the purpose for which it is issued. It is not, in
any sense, a permissive phrase, and to embrace in the warrant
its purpose certainly tends to subserve the public interest,
and to protect the public funds in the custody and under the
control of the city treasurer. When the object of the stat-
utes are considered, and the general rules for the construction
of such as concern the public and its affairs are followed,
there is no escape from the conclusion that the statute is
mandatory. This conclusion is abundantly sustained by an
unbroken series of decisions, where the question has received
attention.

*Glidden v. Hopkins,* 47 Ill. 525, was an action brought by
Hopkins against Glidden and others, as directors of a school
district, to recover upon a warrant. On the trial of the cause,
plaintiff offered in evidence, to sustain the issue on his part,
the original instrument, to the admission of which defend-
ants objected, for the reason that the writing did not show
on its face for what purpose it was drawn or what indebted-
ness it was to pay. The court overruled the objections, and
plaintiff obtained judgment. In deciding the case, Judge

Breese used the following language : " Certain school funds collected from taxes levied by the order of directors, or from the sale of property belonging to any district, can be paid out on the order of the directors ; and all moneys and school funds liable to distribution, not being principal, paid into the township treasury, or coming into the hands of the township treasury, can be paid out only on the order of the proper board of directors, signed by a majority of the board, or their president and clerk ; and in all such orders the purpose for which, or on what account drawn, shall be stated, and a form is given in which they may be drawn.   From the various provisions of this act, a studied design on the part of the legislature to protect the school fund, and guard it from all misapplication, is quite apparent.   This provision, requiring orders to express on their face for what purpose drawn, must, in the light of this legislation, be regarded as mandatory, and the provision itself is so just, and so well calculated to protect the fund, that it cannot, and ought not, in any case to be dispensed with.   The order offered in evidence was not an order authorized to be drawn, and consequently it furnishes no ground of action against the succeeding board of directors. * * * The board of school directors, though a corporation, are possessed of certain specially defined powers, and can exercise no others, except such as result by fair implication from the powers granted. * * * This order, tested by the statute, was void in its inception, and incapable of being made valid by the act of any succeeding board, or by the promise of any official to pay it."   In the case of *District of Columbia v. Cornell*, 130 U. S. 655, it was held that certificates of indebtedness issued by a municipal corporation have no validity unless issued for a purpose authorized by law.   In the case of *Bayerque v. City of San Francisco*, 1 McAll. 175, the section under consideration reads as follows : " Every warrant upon the treasury shall be signed by the comptroller, and countersigned by the mayor, and shall specify the appropriation under which it is issued, and the date of the ordinance making the same.   It shall also state

from what fund and for what purpose the amount specified is to be paid ; also the appropriation under which it is issued and the date of the ordinance making the same." The judge, in delivering the opinion, said: " This cannot be regarded as a matter of form. It is a substantial requirement, and inserted to carry out the policy contemplated to be pursued for the protection of the public from the recklessness of city officers, and the collusion with them of third parties." The warrant referred to failed to specify the appropriation under which it was issued, and the date of the ordinance, and it was held that it could not be recovered on as a warrant, even in the hands of the original holder ; that they were not legally issued, nor was the treasurer authorized to pay them. " The defendant is not a private trading corporation, but a public municipal one. In the distribution of its powers among its agents, the legislature has interposed a check upon the officer having the custody of the public money, by authorizing him to pay only such warrants as purport on their face to have been issued under some previous appropriation, and the date thereof must be given. None other could lawfully issue."

In the case of *Smeltzer v. White*, 92 U. S. 390, it was held that where the statute required the treasurer to disburse some of the county money on warrants drawn and signed by the county judge, and sealed with the county seal, and not otherwise, the treasurer could pay no orders or warrants unless they were so sealed, and that no warrant is a genuine county warrant which is unsealed by the county seal. *Prescott v. Gonser*, 34 Iowa, 178 ; *Springer v. County of Clay*, 35 Iowa, 243 ; *State v. Smith*, 89 Mo. 409. *Reeve v. City of Oshkosh*, 33 Wis. 477, was a case where the charter of the city of Oshkosh provided that " all orders drawn upon the treasurer shall specify the purpose for which they were drawn, and shall be payable generally out of any funds in the treasury belonging to the city, except the school fund. Held, that this provision is mandatory, and no recovery can be had on an order which does not specify the purpose for which it is drawn." In the case of *Martin v. San Francisco*,

16 Cal. 285, it was held that where the warrants do not comply, in their form, with the requirements of the city charter, they would not constitute any authority to the treasurer to pay them, because they do not specify the appropriation under which they were issued or the date of the ordinance making the same. In the case of *City of Leavenworth v. Rankin*, 2 Kan. 357, this language is used: "Municipal corporations are creations of the law, and possess no powers except such as are conferred by law. They act under prescribed rules, and must act in accordance with them. They cannot, in any sense, be said to act as natural persons. When they undertake to make contracts, they must observe the regulations prescribed in that behalf, else there will be no contract, and no subsequent act can cure the defect. Their power to contract must be delegated by law, while that of a natural person is inherent. * * * When the law prescribes a prerequisite to their ability to contract, the obligation to observe it cannot with impunity be disregarded. Nor will a subsequently attempted ratification cure the defect. Such a construction would render nugatory the most salutary safeguards, and, in effect, make municipal corporations omnipotent. They must contract, if at all, within the prescribed limits, and according to the prescribed forms. They take no powers by implication." In the case of *Turner v. City of San Francisco*, 7 Cal. 463, it was held that "a comptroller's warrant, to be valid, must be in the form prescribed by the charter of the city."

Municipal warrants are instruments drawn by the officers of a corporation upon its treasurer, directing him to pay a certain sum of money specified therein to the person named or bearer. They are vouchers; the necessary instruments for carrying on the machinery of municipal administration. 1 Dill. Mun. Corp. § 485. The power to issue such paper is usually conferred by charter or statute, and they must be drawn by the proper officer, and all conditions precedent must be strictly complied with. *Trustees v. Cherry*, 8 Ohio St. 565. When required by law to issue a warrant, such officer has

no discretion. His act is merely ministerial. *Campbell v. Polk Co.*, 3 Iowa, 467. The foregoing authorities, it seems to me, satisfactorily establish the fact to be that the section of the charter under consideration is mandatory; that the purpose for which a warrant is issued must appear upon the face of the warrant. It is not necessary, in my judgment, that the section of the statute referred to should go beyond the emphatic language used, and say that, if it does not so appear, the warrant shall be void. In addition to the fact that the authorities establish the provision of the section as mandatory, I think they establish the fact to be that the warrant, omitting the recitation, is void; that it is void upon its face; that it had no tendency to defraud the city government; and no one will contend that, had the office of city treasurer been carefully administered, such a warrant would have been received and paid.

Can it be urged that if the treasurer of the city of Denver, or his deputy, knowing the law, had been honest and faithful in the discharge of his duties, a warrant of the kind in question, failing to contain the matters and things specified by the statute, in order to make it a valid warrant and a voucher in his hands, could possibly have failed to detect the omission in this case? It is equally true that any bona fide purchaser, who might have purchased this warrant without any knowledge of the provisions of the charter, would not have been permitted in any court to recover upon it. It would not be evidence of a legal obligation, and no court, either at law or equity, would have been warranted in the face of the statute in giving judgment against the city upon such a warrant.

There are many decisions wherein municipal powers and warrants issued thereunder have received the consideration of courts, and where they have undoubtedly held that, when the inquiry concerns simply the form of the paper, and there has been a substantial observance of the statutory requirements, the warrants were valid; but none have ever gone to the extent of determining that, when the omission was of matters of substance, the warrant was of any validity. Statutes

which prescribe what a warrant shall contain are universally, and without known exception, held to be mandatory.

It being void, can the crime of forgery be predicated upon it? The force of the cases which hold the statute to be mandatory, and that the warrant, lacking the statutory requirements, is void, and that forgery cannot be predicated upon such a warrant, is to be found in the application of the principle that there must be a legal tendency to deceive, in order that the crime of forgery may be laid. This legal tendency includes also the element of validity or legal sufficiency; without this, as the cases say, there can be no legal tendency to deceive. The legal invalidity, being apparent from an inspection of the document, is lacking the tendency to deceive or harm, and so the following cases hold. In the case of *People v. Shall*, 9 Cow. 778, it was held that an instrument void upon its face, and not shown to be operative by averment, if genuine, is not the subject of forgery. And in the course of the opinion this language is used: "Void things are as no things. Was it ever heard of that the forgery of a *nudum pactum*—a thing which could not be declared on or enforced in any way—is yet indictable? It is the forgery of a shadow." *Rex v. Richards*, Crown Cases, 193; *Rex v. Lyon*, Ib. 255; *Rex v. Burke*, Ib. 497. In the case of *People v. Heed*, 1 Idaho, 531, it was held that, if the original instrument alleged to have been forged or counterfeited is void upon its face, an indictment for forgery will not lie for counterfeiting such an instrument. This was a case where the defendant was charged with forging a county warrant for the sum of $175. "A writing invalid on its face cannot be the subject of forgery, because it has no legal tendency to effect a fraud. If, therefore, a statute authorizes an instrument not known to the common law, and so prescribes its form as to render any other form null, forgery cannot be committed by making a false statutory one in a form not provided for by the statute, even though it is so like the genuine as to deceive most persons." 2 Bish. Crim. Law, § 538: *Rex v. Moffatt*, Leach, 431; *Rex v. Lyon*, Ib.

597. In the case of *Cunningham v. People*, 11 N. Y. (Supreme Court Rep.) 455, it was held that, " If a statute authorizes an instrument not known to the common law, and so prescribes its form as to render any other form null, forgery cannot be committed by making an instrument in a form not provided by the statute, even though it is so like the genuine one as to be liable to deceive most persons." In *Roode v. State*, 5 Neb. 174, it was announced that, " if an instrument does not purport on the face of it to be good and valid for the purpose for which it was created, it cannot legally be the subject of forgery, if not genuine." In *Rembert v. State*, 53 Ala. 467, it was held that " an instrument which, on its face and in its frame, is illegal or necessarily innocuous from its character, is not the subject of forgery." In *Clarke v. State*, 8 Ohio St. 630, the court said : " An indictment for forgery must not only allege the false making or alteration of a writing specified in the statute, with intent to defraud some named person or body corporate, but it must also appear on the face of the indictment that the fabricated writing, either of itself or in connection with the extrinsic facts averred, is such that, if genuine, it would be valid in the law to prejudice the rights of the person or body corporate thus named." *Barnum v. State*, 15 Ohio St. 717. In the case of *People v. Tomlinson*, 35 Cal. 503, it was held that " the purpose of the statute against forgeries is to protect society against the fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, create some liability, or work some prejudice to another in his rights of person or property."

I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city, or of individuals, when we know that it was the duty of the city officers to recognize the omission of a statutory requisite necessary to make of the warrant in question a genuine warrant, and when we know, in addition to that, that persons dealing with corporations must be assumed to know the extent of its cor-

porate powers, and take notice of any restriction in its char-
ter. So, too, are the duties and powers of an officer of a
corporation prescribed by statute, and all persons dealing
with such officers must take notice of such limitations im-
posed upon·their authority by such statute.     Dill. Mun.
Corp. § 381.   No duty or liability was created against the
city of Denver by this warrant, not even to the extent of
$3.50.   No action at law would lie upon it.   No court of·
equity would enforce payment of it.   No city treasurer
would be obligated to recognize it, but, on the contrary, are
positively inhibited from paying it.   In the case of *Water-
man v. State*, 67 Ill. 91, it was held that the writing forged
must subject the party affected to legal liability, if genuine.
It was urged in the argument that the defendants have not
insisted or asserted that they were not guilty of obtaining
illegitimately money from the city treasury.   This may be
admitted, yet this admission does not warrant us in sustain-
ing a conviction for a crime which has not been committed;
and as is said in *State v. Corfield*, 26 Pac. Rep. 498, where
it was intimated by the state that the defendant could not
be punished at all unless for forgery under this statute, the
court said : " That is wholly immaterial, so far as the ques-
tion presented to this court is concerned. * * * We hardly
think, however, that our statutes are so barren of· remedies
as to furnish none in this case."   In a more recent case in
California, the supreme court of that state has reiterated the
rule that the false making of an instrument "merely frivo-
lous, or one which upon its face is clearly void, is not forgery,
because from its character it would not have operated to de-
fraud or been intended for that purpose."   *People v. Bibby*,
27 Pac. Rep. 781.   The only case that I have been able to
find which asserts the contrary doctrine is the case of *People
v. Eades*, 68 Mo. 150, in which case the court took occasion
to say that the case of *People v. Wright*, in 9 Wend. 193, is
criticised, if not overruled, in the case of *People v. Stearns*,
21 Wend. 409.   A careful reading of this last cited case will
show the contrary to be true, for in the opinion in that case

the doctrine of 9 Wend. is reiterated, and the following language is used : " A writing void on its face is a familiar instance of a paper in respect to which forgery cannot be predicated without the averment of some extrinsic circumstances showing that it may become pernicious." *Fadner v. People*, 33 Hun, 240. A large number of cases are cited in support of the doctrine, and the court proceeds further to say : " This is on the presumption that every man knows the law, and is able to appreciate the legal effect of the instrument. Therefore it cannot, in legal contemplation, defraud any one." The opinion quotes from Hammond on the Law of Forgery, as follows: " The settled common-law rule is that, how clear soever the fraudulent purpose, unless the writing is sufficient to accomplish that purpose, it is not forgery, since, with a single exception, actions only, and not evil intentions, are punishable by the English law, and actions only which actually do, or possibly may, produce injustice." *Rollins v. State*, 22 Tex. App. 548; *People v. Galloway*, 17 Wend. 540 ; *Howell v. State*, 37 Tex. 591.

If the warrant in question had any validity, or was calculated to legally prejudice the corporation, then we should have no hesitancy in saying that forgery might be predicated upon it. But, having reached the conclusion that it is void upon its face and worthless for any purpose, we are reluctantly compelled to hold that it is not a subject of ' forgery. There can be no legal tendency to harm by the alteration of a paper that has no legal efficacy or validity. It may be said an almost universal test is that, unless the warrant is valid, and suit could be brought on it, then forgery cannot be predicated upon it. The rule is that, " to constitute forgery, the forged instrument must be one which, if genuine, may injure another, and it must appear from the indictment charging the offense that such is its legal character, either from its recital or description of the instrument itself ; or, if that does not show it to be so, then by the averment of matter *aliunde* which will show it to be of that character." The indictment fails to comply with this rule. In the case

of *People v. Harrison*, 8 Barb. 562, the identical question here involved was discussed. The court in the opinion said : " This certificate, if genuine, is clearly defective in form and substance, under the statute. It does not set forth that the grantor *acknowledged the execution of the conveyance.* The defect is fatal to the validity of the certificate. The statute is imperative that the officer shall indorse a certificate setting forth, among other things, that the execution of the conveyance was duly acknowledged by the grantor. Without this requisite, no record could be made, and at law no title would pass. The question arising is whether the crime of forgery can be predicated upon such a certificate. I think it cannot. The invalidity of the instrument is apparent upon its face, and, to be the subject of indictment, the certificate should be so far perfect in form and substance as to be valid, if genuine. It is not the falsity of the writing alone, but also its supposed fraudulent effect, which makes a forgery criminal. If the forged instrument is so obviously defective in its form as this is, the law will not presume that it can accomplish the fraud which is perhaps intended. The law presumes a competent knowledge to guard against any such effect, and that no person can be injured thereby in his rights or property. This certificate has doubtless been used to perpetrate a gross wrong upon the grantee named in the conveyance. He has been induced to accept the deed as valid, and to part with the purchase money for the land. It has been used as a false token, by which money has been fraudulently obtained, but the defendant has not been convicted under the statute in relation to cheats. If he had been, the conviction would have been good as well as merited. If the forgery, however, is not such as the law condemns as criminal, it cannot be made so by the want of prudence or circumspection on the part of the person actually defrauded."

Having determined that the provisions of the charter referred to are mandatory, and that the alleged warrant upon which the crime of forging and uttering is based is void, we still have to determine whether the provisions of the statute

are broad enough to cover the offense as alleged in the indictment. Section 775, Gen. St. 1883, provides that " every person who shall falsely make, alter, forge, or counterfeit * * * any auditor's warrant for the payment of money at the treasury, county order * * * or any order or warrant or request for the payment of money, * * * with intent to damage or defraud any person or persons, body politic or corporate, * * * or shall utter, publish, pass, or attempt to pass, as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, forged or counterfeited, with intent to damage or defraud any person or persons, body politic or corporate, * * * every person so offending shall be deemed guilty of forgery. * * * " The alleged warrant in question, being void upon its face, has, in my judgment, no greater legal efficacy than a piece of blank paper. It is not a warrant, and cannot be classified as such. It could not be passed, or attempted to be passed, as true and genuine, and is nothing more or less than a false token, if it can be declared that. In the briefs, nor in the oral argument, was our attention called to the statute.

Relative to the power of the court to appoint assistant counsel, I am thoroughly satisfied that the contention of counsel for plaintiffs in error is neither supported by the statute of the state, by authority, nor by sound reason. Every attorney admitted to practice in the state of Colorado is a sworn officer of the court. His obligation, subscribed and sworn to at the time of receiving his certificate as an attorney, is quite as full and complete as that taken by the district attorney. It is true, when acting as special attorneys by direction or permission of the court, they give no bond for the faithful performance of the duties of district attorney; but yet their conduct is susceptible to review by the court appointing them, as well as by the supreme court, and, should it prove to be unbecoming an officer of the court, a penalty

as severe as that nominated in the bond of the district attorney can be inflicted by either court. They are liable to fines and imprisonment and to disbarment, and their action as special counsel is subjected to the immediate control of the court appointing them. The sections of the statute referred to in the argument apply only to the appointment of some one or more attorneys to act as district attorney, and not to the appointment of attorneys to assist in the preparation and prosecution of crimes. The record fails to disclose that the defendants were in any way prejudiced or injured by the appearance of special counsel before the grand jury. It is neither averred, nor was it claimed in argument, that they were so prejudiced or injured. It appears from the record that the district attorney signed and presented the indictment to the court, and it is fair to assume that, while he may not have been present at all times before the grand jury, and did not conduct the examination of witnesses there, yet he supervised and indorsed the action of special counsel appointed to assist him. In the case of *Tull v. State*, 99 Ind. 238, it is held that the court " has inherited discretionary power to appoint attorneys to assist the prosecuting attorney in criminal causes, and to allow a compensation payable out of the county treasury, nor will its action be reviewed save in cases where a clear abuse of discretion appears." This is a well-considered case, and, in my judgment, warrants the conclusion that I have reached upon this point. *State v. Bartlett*, 55 Me. 200 ; *Jarnagin v. State*, 10 Yerg. 529 ; *Rounds v. State*, 57 Wis. 45. It is true that this question has frequently been presented to the supreme courts of the various states, but I have failed to find one well-considered case where the power of the court to appoint attorneys to assist the prosecuting attorney has been denied ; especially when the record failed to show that the court had not abused the discretionary power vested in it to so appoint.

As to the third and fourth errors, I am clearly of the opinion that the court was warranted in admitting the testimony objected to as well as in admitting the various exhibits

offered by the people. In a case where the crime of forgery
is involved, and upon the theory on which the case was tried
in the court below, I do not think the defendants have a
good ground of complaint, so far as the instructions are con-
cerned. I deem it wholly unnecessary to further consider
the errors assigned. Suffice it to say that my examination
of the record and authorities lead me to the conclusion that
no error, other than the first one above considered, occurred
at the trial that would warrant a reversal of the judgment.
I think the indictment was insufficient, and that the crime
charged in the indictment was not proved. The record in
this case discloses a remarkable combination among city offi-
cials to procure from the treasury of the city unlawfully large
sums of money. A system was agreed upon, and it is evi-
dent was for a time successful. That a crime has been com-
mitted for which the defendants ought to be punished cannot
be doubted. But the question for our consideration, and the
one we are called upon to decide, is whether the crime of
forgery or uttering a forged paper has been committed. The
alleged warrant in question was not used for the purpose of
obtaining the money, from the city treasury, but was used for
the purpose of accounting for certain moneys that had been
unlawfully abstracted by the city officials, and divided among
themselves. The judgment of the court below should be re-
versed. But, inasmuch as the record discloses the facts to
be that a crime has been committed by the defendants, they
should not be discharged, but remanded to the custody of
the sheriff to await the action of the authorities in the prem-
ises ; and it is so ordered.

BISSELL, J., concurred.

REED, J., (*dissenting*.) Plaintiff in error Raymond was
deputy auditor of the city of Denver, Hadley, deputy treas-
urer, and they were indicted and convicted of forgery. Jos-
lin & Son, merchants, presented to the city council a bill
against the city for $3.50. The bill was allowed, and a war-

rant ordered to be drawn upon the city treasurer for the amount. A warrant was so drawn, which was by Raymond forged or raised to $303.50, which sum was paid from the city treasury. The guilt of the parties was established beyond controversy,—was, in fact, tacitly conceded,—consequently no question of fact is presented. The questions presented are purely legal, the contention being that, under the established facts, the parties were improperly indicted and convicted of the crime of forgery; that the indictment and conviction should have been for larceny or embezzlement.

Section 87, Crim. Code, (Gen. St., p. 312, § 775; Mills' Ann. St., p. 907, § 1258,) is as follows: "Every person who shall falsely make, alter, forge, or counterfeit any record or other authentic matter of a public nature, or any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, United States treasury note, or United States bond, bank bill, or note, post note, check or draft, bill of exchange, contract, promissory note, duebill for the payment of money or property, receipt for money or property, power of attorney, any auditor's warrant for the payment of money at the treasury, county order, or any accountable receipt, or any order or warrant or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing or acquittance, release, or receipt for money or goods, or any acquittance, release, or discharge for any debt, account, action, suit, demand, or other thing, real or personal, or any transfer or assurance of money, stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer stock or annuities, or to let, lease, dispose of, alien, or convey any goods or chattels, lands or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, or order, or assignment of any bond, writing obligatory, or promissory note for money or other property, or shall counterfeit or forge the seal. or

handwriting of another, with intent to damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in or belong to this state or not, or shall utter, publish, pass, or attempt to pass, as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in this state or not, every person so offending shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not less than one year, nor more than fourteen years." Section 15, art. 3, Amend. Charter of the City of Denver, (Sess. Laws 1885, p. 90,) is the following: "It shall be the duty of the city treasurer to receive, receipt for, and keep the money of the city, and pay out the same only on warrants drawn by order of the city council, signed by the mayor, countersigned and registered by the city auditor, and attested by the city clerk, under the seal of the corporation." By section 22, art. 3, of same act, it is provided: "No money shall be paid out by the city treasurer for any purpose except upon warrants drawn upon him by order of the city council, and signed by the mayor, countersigned and registered by the auditor, and attested by the clerk; and every such warrant shall show on its face the date of its issue, the date of the order of the city council, to whom and for what purpose issued, and from what fund payable; and all city warrants, except those mentioned in the proviso to this section, shall be payable on demand. No warrant shall issue for a sum greater than that actually due to the person in whose favor it shall be drawn; nor shall any city warrant draw a greater rate of interest than six per cent per annum." The following is a copy of the original warrant.

"Auditor's Office, City of Denver.   No. E. 1,974.

"Treasurer of the City of Denver: Pay to Joslin & Son or order $3.50, three 50 dollars, out of any money in the treasury not otherwise appropriated, for ———, and charge the same to miscellaneous fund; and this shall be your voucher.  By order of the city council of date Jul. 31, 1890.

"Issued Aug. 1, 1890.

| | |
|---|---|
| "[CITY SEAL.] | Countersigned by |
| "Attest: | A. A. McKNIGHT, |
| "W. H. MILBURN, | City Auditor. |
| "City Clerk. | ———, |
| "——— | Deputy. |
| "Deputy. | WOLFE LONDONER, |
| | Mayor." |

The order as forged and changed read: "Pay to Joslin & Son or order $303.50 three hundred three 50 dollars." It otherwise remained unchanged.  It will be observed that in the warrant as drawn there remained an unfilled blank, the warrant failing to state "the purpose for which it was issued."

There are 37 errors assigned, many of which we do·not deem it necessary to examine.  The indictment contains twelve counts,—six were' for the forgery, and six for utter-ing, publishing, and passing the forged warrant.  I agree with the conclusion reached in the majority opinion of this court, that no serious error occurred in the appointment of special counsel, the joinder of the different counts in the in-dictment, the general verdict of the jury upon all the counts, and in the admission and rejection of evidence and the in-structions of the court.  So far the court is unanimous.  Upon the main proposition and question involved, I am com-pelled to differ.  It is held in the majority opinion that the warrant (the blank being unfilled) is not in the form pre-scribed by the city charter, was void upon its face, and could not be the subject of forgery; and upon this ground, and this alone, the conviction and judgment is reversed.

The learned judge who wrote the opinion, in conclusion,

VOL. II—23

uses the following language: " I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city or of individuals, when we know that it was the duty of the city officer to recognize the omission of a statutory requisite necessary to make of the warrant in question a genuine warrant. The alleged warrant in question, being void upon its face, has, in my judgment, no greater legal efficacy than a piece of blank paper. It is not a warrant and cannot be classified as such. It could not be passed, or attempted to be passed, as true and genuine, and is nothing more or less than a false token, if it can be declared that." With this conclusion it is impossible for me to agree. I do not consider it supported by law nor founded in reason. It is clearly, in my opinion, the result of misapprehension of the law controlling the case,— a confusion or confounding of the law applicable in a civil case, where the payment of the warrant is resisted for informality, with the law controlling in criminal cases. Although at the very outset in the printed argument of plaintiffs in error is stated, " Plaintiffs in error were indicted and convicted under section 775, p. 312, Gen. St., for forging and uttering a certain city warrant of the city of Denver," it is in the opinion treated as an indictment at common law, and numerous common-law authorities are cited and relied upon to sustain the position. The statutory offense is nowhere discussed, nor are we shown to what extent, if at all, the common-law rule is modified by the statute, or the offense taken out of it, or how, if in any respect, our statute differs from those of the states whose decisions are supposed to support the contention.

Of the twenty American cases cited in the main opinion, eight are civil suits, and the balance criminal cases. I cannot conceive how the civil cases cited can have any bearing upon the question whatever. They are suits brought upon irregular warrants against municipal corporations where payment was refused. I concede that such irregularities are, and may be, proper defenses in a civil suit; but the distinc-

tion drawn between civil actions for the collection of warrants and cases where forgery can be sustained is so marked and well defined that they should never be deemed parallel or analogous. Almost from time immemorial it has been held that a paper need not be enforceable in a court of law to make it the subject of forgery. See *Crooke's Case*, 2 Strange, 901; *Deakin's Case*, 1 Sid. 142; *Coate's Case*, 1 Ld. Raym. 737; *Sterling's Case*, 1 Leach, 99; *Coogan's Case*, Id. 449; *King v. Buttery*, 1 Russ. & R. 342; *Rex v. Avery*, 8 Car. & P. 596; *Rex v. Barber*, 1 Car. & K. 434. See *Hawkesworth's Case*, 1 Leach, 257. He was indicted for forging a bill of exchange. Objection was taken that it was not stamped pursuant to St. 23, Geo. III., c. 33. That statute not only required the bill to be stamped, but provided "that a bill without a stamp shall not be pleaded, or given in evidence, or be available in law or equity." Our statute requires the insertion of for what purpose issued, but it is not declared or made void or invalid by the omission, as in that statute. In that case, counsel for prisoner urged his contention in language nearly identical with that cited above from the majority opinion: "That it was not a bill of exchange, but a piece of waste paper, incapable of becoming the subject of either fraud or felony; that the party who took it must at the time have known that it was not a legal bill of exchange, or he must have been grossly negligent, the defect being visible upon the face of it." But Buller, J. overruled the objection, and said that the false instrument had the semblance of a bill of exchange, and was negotiated by the *prisoner as such*. And, on a case reserved, the judges *were all of opinion that the prisoner was properly convicted;* holding that, although it could not be pleaded or given in evidence or be available in law or equity, "*signified only it should not be made use of to recover the debt*," but it did not affect the law of forgery. Shortly after the same question was presented in *Lee's Case*, 1 Leach, 258. "*The question underwent much consideration*, and was debated by *the judges in the course of several terms*," the court holding that it made no

alteration in the law of forgery, "but only to provide that the instrument should not be available for the purpose of recovering on it in a court of justice;" *and they considered that*, in order to constitute forgery, it was not necessary that the instrument should be available;" and this has been the rule of law down to the present time, and still is. I do not hesitate to say that I do not believe an authority can be found outside of the opinion in this case, and that of *People v. Heed*, 1 Idaho, 531, (written by a blacksmith,) where it was held that forgery could not be predicated on an instrument not enforceable at law.

Was the instrument in question at common law void, so that its forgery could not be a legal basis for an indictment, as held in the majority opinion? The earliest well-considered and authentic case reported at length is *King v. Ward*, 2 Ld. Raym. 1461, (A. D. 1726.) It appears that the Duke of Buckingham had in store with one Ambrose Newton a large quantity of alum. The certificate was delivered to Ward as agent for purposes of sale. Upon the back of such certificate the following indorsement was forged:

Schedule.

| Tons | C |
|------|---|
| 660 | 5 |
| 325 | 5 |
| 975 | 10 |

Mr. John Ward: I do hereby order you to charge the quantity of six hundred and sixty tons and one quarter of allum to my account, part of the quantity here mentioned in this certificate, and out of the money arising by the sale of the allum in your hand pay to Mr. W. Ward and yourself ten pounds for every ton according to agreement, and for your so doing this shall be your discharge.        BUCKINGHAM, April 30, 1706.

It was objected—First. That it was no forgery at common law; that the information was based upon the common law, and not upon St. 5 Eliz., c. 14. Second. It was insisted that at common law forgery must be of a record or something of a public character; that counterfeiting writings of a private character was not forgery. Third. "It was further argued that a forgery is not punishable, unless it is to the prejudice of some person." On the first two points the court held unanimously that the offense was indictable at common law.

Passing upon the third point, the court said, (2 Ld. Raym. 1466 : ) " Upon that statute (5 Eliz., c. 14) no. fact was punishable, but where the offender had carried his fraud into execution, and got the money or goods into his possession, whereby the party defrauded was actually prejudiced.  But a man is punishable for a forgery, *if it may be prejudicial,* though the mischief is prevented by the discovery of the forgery.  And that, therefore, is an answer to another objection made by the defendant's counsel, that it does not appear the Duke of B. was actually prejudiced, it not being averred that the delivery of the alum was avoided in fact by this forged indorsement; for, if he might be prejudiced by it, that makes the forgery an offense, for which an indictment would lie at common law ; as if A. forges a bond in B.'s name, though B. is never obliged to pay the money, an indictment without all question will lie at common law.  And for these reasons the court were clear of opinion that this offense, of forging an indorsement on the back of the certificate, whereby the Duke of B. might be defrauded of the alum, was a forgery, for which this information will lie at common law."  And at page 1469 : " But, as to this, the court held it not necessary to lay a publication in the first information, for the forgery was punishable, though the party was not actually prejudiced, if he might be prejudiced by it, and therefore they held it good, though the information did not show the duke was actually defrauded of the alum ; and for the same reason there was no necessity to lay that the writing was published."  The conviction was unanimously held good by all the judges of court of king's bench.

I review this case at some length from the fact that it has been the basis of many more modern decisions upon which counsel rely.  It will at once be seen that to take a forged paper out of the operation of the law, as there decided, it must be upon its face so invalid and void as to be worthless ; in the language of the judges, " a *writing of no consequence, or. that could prejudice nobody.*"  " *If he might be prejudiced by it, that makes the forgery an offense* for which an indictment

would lie at common law." Following that case was *Moff-att's Case*, 1 Leach, 431, (A. D. 1787.) Moffat was indicted for forging the name of the drawer, and an acceptance on a bill of exchange. It was objected that the bill of exchange was void. By the statutes of 15 Geo. III., c. 51, and 17 Geo. III., c. 30, it is provided that the place of residence of the payee and of the indorsee should be stated in the bill and in the indorsement. It was also declared by such statutes that every bill of exchange and indorsement, *failing to comply with such requirements, should be void.* The statutes then impose a penalty of from £5 to £20 upon any person who shall " utter, publish, or negotiate notes, bills of exchange, etc., contrary to the method above prescribed." The bill of exchange was held void under the statutes, and that an indictment for forgery would not lie—it was a purely statutory proceeding. Comment is unnecessary. The paper was declared void by statute—was not only absolutely void upon its face, but subjected any party to a penalty who attempted to pass it; and, being absolutely invalid and worthless, the decision was in keeping with *King v. Ward*, and has no bearing in this case. In *Lyon's Case*, 2 Leach, 597, the prisoner was indicted for forging a receipt for money. Held that no conviction could be had, as it was not a receipt for money, within St. 2 Geo. II., c. 2, not complying with the statutory requirements. Mr. Justice Grose said : " For if he had merely looked at it he must have perceived it was nothing more than waste paper." The provisions of the statute are not stated, but it is clear that the statute was similar to that in regard to notes and bills of exchange. *King v. Richards*, Russ. & R. 193, was an indictment for forging an order for money from the navy department. There was no payee. Held by the judges, Lord Mansfield dissenting, that it was not an order for money, as no payee was named, and that the indictment could not be sustained. *King v. Randall*, Russ. & R. 195, (A. D. 1811,) following *King v. Richards*, that the indictment for forging could not be sustained on a bill of exchange without a payee, it having been drawn

"payable to ———— or order." Held not to be a bill of ex-change. *King v. Lyon*, Russ. & R. 255, (A. D. 1813,) was an indictment of a power of attorney to receive prize money. The forged power of attorney did not comply in form with the requirements of St. 31 Geo. II., c. 10. Defendant was tried before Lord Ellenborough, and convicted. Baron Graham and Bayley, J., maintained that, not being in form as required by statute, it was void, "and no person could be guilty of a capital crime in forging it." But the majority of the court *held the conviction right; that it was not a void instrument*, though lacking in statutory requirements; "it might be the subject of a criminal prosecution; that a payment made under it to the use of the petty officer would be good as against him; and that the attorney under it might bring an action for the prize money or execute a release;" clearly holding that, *not being absolutely void for all purposes, the conviction could be maintained*. In *King v. Pateman*, Russ. & P. 475, a note for one pound was raised to £40, but the signature was cut off. Held it was not a promissory note *under the statute* for want of a signature, and the conviction wrong. In *King v. Burke*, Russ. & R. 496, (A. D. 1822,) the paper was held a mere nullity. It was charged in the indictment *as a promissory note*. Held, that it was not such in any legal sense; hence that the indictment was not sustained.

It will be observed that in several of the cases cited and relied upon the judgment was based solely upon the statutes, and upon the technical misdescription of the instrument alleged to have been forged, and turned entirely upon a question of criminal pleading. It will also be observed that most of the cases were under statutes minutely designating the requirements of each paper, to render it valid, *and declaring them void*, when lacking any designated requirement. This I consider a sufficient review of the old English authorities. Among the earlier cases in this country is *People v. Shall*, 9 Cow. 778, (A. D. 1829.) Shall was indicted for forging the following: "Three months after date I promise to pay Se-

bastian I. Shall or bearer the sum of three dollars in shoe-making at cash price, the work to be done at his dwelling house near Simon Vrooman, in Minden.  DAVID W. HOUGH-TALING.  Minden, August 24th, 1826." He was indicted for forging "a certain promissory note of hand." There was no averment of any extrinsic matter. Held, it was not a promissory note. The court said: "It expresses no value received nor any consideration whatever, and no action could be maintained upon it if genuine." "It is *utterly void* of itself as a common-law contract." It is characterized as a writing void in itself and so appearing in the indictment. Great reliance is placed upon this case by counsel. One fact is apparently overlooked. It is not the decision of a court of last resort, but of one circuit judge in oyer and terminer. Certain portions of the opinion are cited, which, detached, support the contention of counsel for plaintiff. Carefully examined and taken as a whole, the case is against them. At page 784 it is said: "I have shown that the paper forged, if genuine, would be a mere nullity for any purpose." In Bish. Crim. Law, that able author states the following conclusion as the result of his investigation, (2 Bish. Crim. Law, § 538:) "A writing invalid on its face cannot be the subject of forgery *because it has no legal tendency to effect a fraud.*" The converse of the proposition must be equally true. *Any paper that has the legal tendency to effect a fraud may be the subject of forgery.* It need not effect its purpose; the fraud need not be perpetrated; no one need be injured. If the paper forged is not absolutely worthless for all legal purposes, forgery may be committed. To take it out, it must be, in the language of the judges in *Ward's Case*, (2 Lord Raym., *supra*,) " *a writing of no consequence*, that could prejudice nobody ;" *contra*, "if a party might be prejudiced by it." This is the test, and this is fully borne out in other sections of Mr. Bishop's. In section 535 it is said: "The forgery of any writing by which a person might be prejudiced was punishable as forgery at common law." Again, same section: "Plainly, however, the writing is sufficient at common law,

if, were it genuine, it would subject the maker to any liabil-ity, * * * either in the form of an action of assumpsit, * * * or to an action on the case in the nature of deceit, as a false representation made to defraud." The conclusion is irresistible that the writing must be absolutely void and worthless for all purposes not to be the subject of forgery. See Whart. Crim. Law, §§ 691, 692, 695, 739; *Ames Case*, 2 Greenl. 365; *Com. v. Costello*, 120 Mass. 358; *Foulkes v. Com.*, 2 Rob. (Va.) 836; *State v. Eades*, 68 Mo. 150; *Jackson v. Weisiger*, 2 B. Mon. 214; *Garmire v. State*, 104 Ind. 444; *People v. Harrison*, 8 Barb. 560; *U. S. v. Turner*, 7 Pet. 132. Take Mr. Bishop's definition of "forgery," (1 Bish. Crim. Law, § 572:) "It is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might *apparently* be of legal efficacy or the foundation of a legal liability." In 2 Greenl. Ev. § 103, it is said: "It [forgery] may be committed of any writing which, if genuine, would operate as the foundation of another man's liability or the evidence of his right." In 4 Bl. Comm. 247, and 2 Russ. Crimes, 708, "forgery" is defined: "A false making or making *malo animo* of any written instrument for the purpose of fraud and deceit." Like all other offenses, intention seems to be an important factor. It must be with the intention of deceiving and perpetrating a fraud; hence the paper forged must be so apparently invalid and worthless upon its face as to negative fraudulent intention, or an indictment will lie.

There is no provision in the statute declaring warrants void for want of the required form. Unless the statute makes the instrument void, an indictment will lie for the forgery,—*Thompson v. State*, 9 Ohio St. 354; *People v. Bibby*, (Cal.) 27 Pac. Rep. 781; *State v. Eades, supra*,—and in many cases it has been held forgery could be predicated upon an instrument declared void by statute, and such is the English doctrine. See cases reviewed above, and 2 *Russ. Crimes* 750–755.

A brief synopsis of the facts in this case is as follows: The city was legally indebted to Joslin & Son $3.50. A bill was

presented, laid before the city council, allowed, and a warrant ordered drawn for the amount. It was the duty of the city auditor to draw the warrant. It was drawn by the deputy, signed by the mayor, countersigned by the auditor, attested by the clerk, and bore the city seal, bore the date of the allowance by the city council, and the date of its issue, and name of the payee. In the ordinary course of business, it should have been delivered to the payee, was the property of Joslin & Son, and should have been placed in their possession. Here was a formal and legal admission of the existing indebtedness of the city, executed with all solemnity by all parties required to participate in it, and more than complying with all the requirements necessary to give it validity and authorize its payment by the treasurer, under section 15, art. 3, of the city charter. It is idle to attempt to maintain that by a trivial, technical omission in the body of it, accidentally or purposely made by one of the defendants, in a matter that in no way affected Joslin & Son, and with which they had nothing to do, rendered the paper utterly invalid, void, and worthless for all purposes. By it the liability of the city to pay was, by its own acts, fixed beyond controversy. Had the treasurer refused payment on account of the omission, it being the duty of the city official to make it technically correct, the omission could have been readily supplied; refusing, he could be compelled by a court to insert the clause. The paper was forged and raised to $303.50 and paid, $300 being appropriated by the defendants. There is no question as to the fraudulent intention, and all resulted in success. Regardless of the statute, under the authorities, the conclusion is irresistible that the paper in question was the subject of forgery at common law, and the conviction proper.

In the majority opinion it is held, and much space is devoted to show, that section 22, art. 3, (Charter of Denver,) requiring a warrant drawn upon the treasurer to show on its face "for what purpose issued," was mandatory. In my view of the case, it is immaterial whether mandatory or directory. The great weight of authority is to the effect

that it is directory. It appears to be a provision inserted to assist the city officers in administering affairs and in keeping the accounts, etc. There is nothing in the statute making the validity of a warrant depend upon the insertion of the clause, nor declaring it void or invalid when omitted. In the administration of city affairs, after the allowance of the claim by the city council and the ordering of the warrant, it was the duty of the auditor to draw the warrant. If mandatory at all, it was mandatory upon the city officers. It was a provision in no way affecting the creditor nor the validity of the warrant issued to him as an evidence of indebtedness of the city. It is well settled, upon unquestioned authority, that where the paper alleged to have been forged was the act and paper of the corporation, evidence was admissible to show the usual course of business in such matters. In this case proof was introduced to establish the fact that, if not customary, it was, at least, common, for the city officials to disregard the statutory requirement of inserting the purpose for which the warrant was drawn. The fact that after the warrant was drawn it was countersigned by the city auditor, signed and attested by the city clerk, and the seal of the city attached, signed and attested by the mayor, and paid by the treasurer, conclusively shows that the statutory requirement was disregarded in the transaction of business, and that the officers guilty of the offense knew that in the ordinary course of business it would be paid with the blank unfilled. In other words the officers guilty of the offense, instead of drawing a void, invalid paper, drew one valid and regular, known to them to be so—one, as subsequent payment proved, capable of fully effecting the fraud contemplated.

It is obvious that neither the other city official nor the treasurer regarded that clause as mandatory, and it was persistently disregarded. There is one section of the charter entirely overlooked in the principal opinion, neither cited nor referred to, (section 15, Id. "City Treasurer.") By it, it will be seen the treasurer was authorized to pay out the city

money " only on warrants drawn by order of the city council, signed by the mayor, countersigned and registered by the city auditor, and attested by the city clerk under the seal of the corporation." Here we have clearly and fully stated all that is necessary to the validity of the warrant to authorize its payment by the treasurer. This section is in no way referred to in section 22, where the same requirements are repeated and further ones added, among which is " the purposes for which drawn." I am at a loss to know why section 15 was entirely ignored in the principal opinion, being one specially relating to the city treasurer, by name and designation, and preceding the one relied upon in the same article. We have, in effect, the reversal of a proper conviction on what to me appears to be a very trifling, frivolous, and technical ground to shield parties, confessedly guilty, from the consequences of their crime. Law is supposed to be a science based upon reason and common sense. Such defenses cannot, morally, appeal to any court; legally, I have attemped to show their inadequacy. Where there is doubt in regard to the guilt of a party, and whether the conviction was warranted by the facts, courts will hesitate and construe all questions favorably to the defendant. It is necessary to protect the innocent from punishment—but where parties are notoriously guilty, and confessedly so under such circumstances as are presented in this case, courts should not exhaust their energy and ingenuity in magnifying a trivial legal technicality into a ground for reversal to shield culprits from well-merited punishment. To a court or layman the proposition is this: The officers of a corporation, having willfully, intentionally, and persistently violated a statute obligatory only upon themselves, leave out a single clause known to be unnecessary to secure the money, secure the money by the forgery, then set up such willful violation of a statute, by them declared to be mandatory, to defeat a conviction for a crime established beyond question.

This court has in this case succeeded in doing what no other court, as far as I am informed ever attempted—allow-

ing a defendant, guilty of two admitted frauds, to set one off as a defense to the other and neutralize both. It does not appear to have been thought of or tried as an experiment, as far as I can find, since *Morton's Case*, 2 East, C. L. 955, 956; 1 Leach, 258, (A. D. 1783.) The court there thought it could not be done. The judges said: "It would be a strange defense to admit in a court of justice that, because a man had forged a stamp, he ought to be excused for having forged the note itself, which would be setting up one fraud in order to protect him from punishment due to another." In this case the experiment appears to have been successful. It is not, as I have attempted to show, necessary to place an affirmance of the judgment upon the ground last indicated. If it were necessary, I should not hesitate to declare that a wanton violation of a statute could not be interposed by the same parties to shield them from punishment for a criminal offense.

It is conceded that the parties were guilty of larceny or embezzlement of the public funds, and it is urged that the prosecution was misconceived,—was for the wrong offense; that it should have been for larceny. It is only necessary to say that the two are separate and distinct offenses, each in its way complete, and that prosecution for one cannot take the place of, nor be substituted for, the other; and that a party guilty of two crimes in the same transaction, for either or both of which a prosecution would lie, cannot usually make his election. So far I have followed the reasoning, grounds, and argument in the principal opinion, in which only the *forgery* as a common-law crime is discussed. In the legal argument and brief of counsel for plaintiffs in error it is asserted: "The plaintiffs in error were indicted and convicted under section 775, p. 312, Gen. St., for forging and uttering a certain warrant," etc. Neither the statutory offense of forgery, nor the uttering of forged paper, is anywhere discussed in the principal opinion. They are "sponged" out, and then ignored, by this hasty paragraph: "In the briefs, nor in the oral argument, was our attention *called to the statute;* and we

are warranted in assuming that the attorneys on behalf of the people did not believe *its provisions were broad enough to cover the crime of forgery, based upon an absolutely void instrument, void upon its face.*" Three times upon one page the learned judge reiterates the statement that the warrant in question was absolutely void,—void upon its face, etc. This rests entirely upon an assumption. No counsel in argument had the temerity to claim that it was "absolutely void,"— void upon its face and worthless. To so assert is to assume it void and worthless for all purposes, and no authority has been, or can be, produced to warrant the assumption. I maintain, backed by all respectable authority, that it was not only not void for all purposes, but was valid for all purposes. At any rate, having forged and uttered it and secured the proceeds, it was an adequate basis for an indictment and conviction. The statutory question on an indictment based upon the statute cannot be thus summarily disposed of. No matter what inference the court may have drawn from the conduct of counsel regarding their view of the breadth of the statute, it becomes the duty of the court to examine it and determine its breadth. It, as far as the crime of forgery, as known to the common law, is concerned, is much broader than the common law. Another fact will be observed that takes the statutory crime of forgery entirely out of the domain of the common law. The statute makes the uttering, publishing, and passing of a paper, "knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person or persons, body politic or corporate, *forgery.*" The indictment in six counts charges the uttering, publishing, and passing, and the uncontradicted evidence not only establishes the fact, but the further fact that by the same conspiracy, by forgery and the payment of forged warrants, the robbery of the people through the city treasury was unlimited in extent. In the early statute of Great Britain, and perhaps at common law, the forging and uttering—the making of the false paper and the successful perpetration of the fraud by receiving the proceeds—were

necessary to convict. Shortly after the two were separated, and each made a distinct offense subjecting to 'punishment; but while made separate and distinct offenses, so that either might be punished alone, where the facts warranted, they might be laid in the same indictment, and a conviction be had for either or both; but our statute makes both the same offense, and the offender can be legally convicted of forgery on either. The language of our statute is, section 87, " Every person who shall falsely make, alter, forge, or counterfeit," etc., " *or shall utter, publish, pass,* " etc., " knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud." etc., " *every person so offending shall be deemed guilty of forgery,* and upon conviction," etc. It is strange that this important feature should not have been considered in the main opinion. By the disjunctive " *or* " separating the former part of the section from the latter, though both offenses are forgery, they are separate and distinct crimes. The party uttering need not be the party who forged. To complete and perfect the offense, it is only necessary—first, that the paper should be forged or altered; second, that the party passing it knew it to be false, forged, and fraudulent; third, that he should utter it or attempt to utter it, with intent to damage or defraud, etc. In regard to the guilty knowledge and the successful perpetration of the crime by uttering and receiving the money there is no question; hence, regardless of the form or regularity of the paper, the offense of forgery, by the uttering alone, was complete. The successful perpetration of the crime by uttering the paper and receiving the proceeds eliminates every question discussed in the main opinion, and warranted the conviction, regardless of the question upon which the conviction is reversed. I am at a loss to know how, in view of the facts of this case uncontradicted and conceded, the following paragraph could have found a place in the main opinion, unless intended to be satirical: " I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city or individuals, *when we know that it was the duty of the city officer to recognize the omission of a statutory requi-*

*site necessary to make the warrant in question a genuine war-
rant.*" What are we to infer from the language used? It
may be inconceivable to my learned associate, but that does
not alter the fact. The criminal and moral turpitude of high
city officials intrusted with millions of the people's money
was not supposable, hardly conceivable, until the facts were
established; but, when the crimes of forgery and the em-
bezzlement of the people's money was proved, it is not sup-
posable that their moral rectitude and sense of duty were so
great as to overcome the criminal intention to get the money,
and compel them to "recognize the omission of a statutory
requisite." If he means that the guilty parties were so im-
bued with the sense of duty, and so controlled by principles
of morality, as city officers, as to render the overlooking of
the omission impossible, then I can only say the inference is
contradicted by every page of the record, and that it is not
astonishing or impossible that persons who could perpetrate
forgery and grand larceny should fail to " recognize the omis-
sion of a statutory requisite; " and, although he was "unable
.to conceive how the warrant in question could possibly oper-
ate to the prejudice of the city or individuals," I can only
say it does not depend upon his ability, comprehension, or
want of comprehension. The fact remains that the identical
warrant did prejudice the city, and through it individuals,
to the extent of $300, and like warrants, probably, to the ex-
tent of as many thousands.

My conclusions are—First, that the crime of forgery at
common law was fully established, and the conviction right;
second, that the crime of forgery under the first part of our
statute was fully established, and the conviction right; third,
that the " *uttering* " by our statute was forgery, regardless
of the form of the paper, and regardless of the questions dis-
cussed in the majority opinion, and the conviction right;
fourth, that, if confessed criminals and public robbers are to
go unpunished under the law, facts, and circumstances of
this case, all law for the punishment of crime should be re-
pealed, and courts abolished.

                                                *Reversed.*