Cowen,
Circuit Judge, now delivered the opinion of the court. I still have to regret that this motion did not take the course which I suggested when it was moved, of a cer *819 tiorari to the supreme court, and a decision by that forum. But counsel did not think the matter of sufficient importance to trouble that court with ; and it becomes our duty to pass upon it here.
It is scarcely necessary to observe that the instrument set out in this indictment, is not a promissory note within the statute of Anne : and it is agreed that the writing does not come within any of the statutes of forgery; it being payable neither in money nor goods, but labor. (1 R. L. 404, 5.) The indictment is, therefore, based upon the common law. ^Another defect renders it utterly void, of itself, as a common law contract. It expresses no value received, nor any consideration whatever; and no action could be maintained upon it, if genuine, as a special agreement to perform labor, without averring and proving a consideration, dehors the instrument. (Carlos v. Fancourt, 5 T. R. 482. Lansing v. McKillup, 3 Caines, 287.) The indictment avers no extrinsic fact by which it might be made operative: nor is it conceivable how matter for such an averment could exist.
The question presented is, whether the fraudulent making of a writing void in itself, and so appearing in the indictment, be the subject of a prosecution for forgery. That it may be we are referred, through Chitty’s Criminal Law, to what was' said in Rex v. Ward, (2 Ld. Raym. 1461, 1466, 1469,) that the fabrication of an instrument, whereby another may be defrauded, is forgery. The information in that case stated that Ward, being chargeable to deliver 315 1-4 tons of alum to Duke Edmund, fabricated a schedule, and endorsed upon it a direction to himself in the name of the duke, to charge 660 1-4 tons of alum to the duke’s account, part of the quantity mentioned in the schedule; and, out of the proceeds of sales of alum in Ward’s hands, to pay himself £10 for every ton according to agreement, and for so doing the endorsement should be his (Ward’s) discharge. This was holden forgery at common law. In answer to an objection taken in arrest, that no publication of the instrument, or actual fraud upon the duke, was averred in the information, the court said that the crime was *820 i complete by the act of forgery ; publication or actual fraud • were not necessary; but it was sufficient that the duke might have been defrauded. An objection in arrest was also taken that the statement of the onerabilis eosistens ad deliberandum, did not lay the time so as to connect it with the instrument forged. The time was holden sufficiently certain; and the information was sustained against every objection. One remark suggested by this case is, that the instrument would have been void in itself; and the averment of onerabilis eooiatens became necessary to complete the crime. Otherwise the duke could not possibly have been imposed upon; and he was the only person *stated in the information to be the object of the fraud. It is plain, too, that such an instrument could have had no legal effect, and could have imposed upon no one, if none of the duke’s alum had been in Ward’s hands.
Ward’s is a leading case; It underwent great examination; and in the course of the discussion, almost every authority upon common law forgeries, then extant, appears to have been considered. The cases referred to were these; Rex v. Stocker, (5 Mod. 137, 1 Salk. 342;) forgery of a bill of lading; Roy v. Ferrers, (1 Sid. 278;) forging the acquittance of a prosecution by Lady Grantham, there being several suits between them; Farr’s case, (Sir T. Raym. 81;) forging a warrant of attorney; Dudley’s case, (2 Sid. 71;) forging a marriage register; Le Roy v. Deakins, (1 Sid. 142;) forging a protection in the name of Sir Anthony A. Cooper, who was of the privy council, but not a nobleman. It was objected, that because he was not a nobleman nor member' of parliament, the protection was void, none but nobles or members having power to grant such an instrument; and so no one could be imposed upon. The objection was overruled, doubtless on the ground that the defect was latent. It did not appear upon the face of the paper, which purported to be a valid one. Domina Regina v. Yarrington, (1 Salk. 406,) was the forgery of a letter; and the judges, in Ward’s case, refer to manuscript cases of common law indictments, for forging a general release and a bill of exchange; and Fortescue, justice, mentioned *821 a similar indictment for forging the endorsement on an army debenture. (2 Ld. Raym. 1465.) In Savage’s case (Styles’ Rep. 12,) the defendant “was indicted for forging and publishing of letters of credence to gather money; and was convicted, and judgment given against him upon his own confession, and £100 fine set upon him.” Of Roy v. Ferrers, it is proper to observe, that I have have looked into 1 Tremaine’s Entries, fol. 129, where the indictment is set forth in full; and I find that, in order to show the application and effect of the forged acquittance, a real demand is recited, which the acquittance purported to discharge. This was evidently necessary, or the instrument would have been no more than blank paper. In all these *eases, the instruments forged were, as far as we can see, apparently available for the purpose intended; to acquire or defeat some right, or to work a prejudice; and we have seen that, in two of the cases, the papers not being prejudicial on their face, the defect is supplied by averment or recital, showing how they might be made to act injuriously by reason of matter aliunde.
I now come to a class of cases which hold that a writing void of itself, and not made good by averment, is not the subject of a prosecution for forgery. In Wall’s case (2 East’s P. C. 953, and note (a) and (b,) the conviction was on an indictment for forging a will of all the premises belonging to J. S., which he bought of T. W. & S. H. The will was attested by only two witnesses; and was therefore void as a devise of a freehold; but would have been good as a bequest, if the pretended testator’s interest had been but a term for years. It was suggested to be the latter; but no such fact appears to have been averred in the indictment; and it was not in proof at the trial. The judges, on conference, held the conviction wrong; for as it was not shown to be a chattel interest, it should be presumed to be freehold. In Moffat’s case, (2 East’s P. C. 954, 2 Leach, 483, S. C.,) the conviction was for uttering as true a forged acceptance on a bill of exchange void by the statute 17 Geo. 3, ch. 30, s. 1, and all the judges held the conviction wrong; for if it had been a genuine instrument, it would have been *822 absolutely void; and nothing could have made it good. In the late case of Rex v. Burke, (Russ. & Ry. Cr. Cas. 496,) the defendant was convicted of .putting away the following instrument; “I promise to take this at thirty shillings, on demand, in part for a two pound note value received. For Cunliffe, Brooks & Co., R. Cunliffewith intent to defraud the firm of Cunliffe, Brooks & Co. The indictment was drawn as at common law; and called the instrument a promissory note. The defendant was convicted at the Lancashire summer assizes, in 1822, after which it was mentioned to the judge of assize that this was not a promissory note, as it was called in the indictment; and he reserved that point. “It also struck the learned judge, that there was great doubt whether the genuine instrument or writing supposed1 to be forged or uttered, had any legal validity; and whether it was not a mere nullity, for the forgery of which no indictment could be sustained; and the lord chief justice concurred in that doubt.” On the case being submitted to the judges, they decided that the judgment should be arrested. The report does not mention on which of the two grounds suggested at the assizes, the decision of the judges proceeded. It is, however, manifest from the case, that it could not have been the ground mentioned by counsel. Though the indictment might have miscalled the instrument, yet it was set out verbatim. Clearly the words promissory note might have been rejected as surplusage; and could not have been the foundation either of a motion in arrest, or an objection for variance. 1 cannot but regard this case as having directly decided the point raised by the judge of assize. The writing was obviously in nature of a receipt or acquittance of thirty shillings on a two pound note; and if the indictment had averred the existence of a note to which it would apply) as in Roy v. Ferrers, it would have made out the case. The People v. Fitch, (1 Wend. 198,) also holds that the forgery of a paper which, if genuine would be a legal non-entity, does not form the subject of an indictment. In- The Commonwealth v. Linton, (2 Virginia Cas. 476,) the defendant was convicted on an indictment for forging a bail bond. A *823 motion was made in arrest of judgment, on the ground that the bail bond was not binding on its face. The court did not question that the objection would have been available if it had been founded in fact; but they applied themselves to show that the bond was good; and on this ground denied the motion. The case of Ames and .others, (2 Greenleafs Maine Rep. 365,) is founded on Savage’s case, which I before cited from Styles. In Ames’ case, the defendant was convicted of forging a written recommendation purporting to be signed by the selectmen of Sangerville, stating that J.-L. was a responsible man, able to satisfy a demand of $500; that he had bought Ames’ land &c.; and that they (the selectmen) should not be afraid to be L.’s bondsmen for 2 or 300 dollars. On motion in arrest - the court held that such an instrument, if genuine, would *have bound the selectmen as a letter of credit, to the amount of 500 dollars ; or would have subjected them to an action for deceit as a false and fraudulent representation. The court say it would, in either mode, “operate as the foundation of liability; and they make this the test of the forgery.
In the principal case, I have shown that the paper forged, if genuine, would be a mere nullity for any. purpose; nor, to my mind, could it be made good by any possible averment. It could not be made the foundation of liability, like the -letter of credit. It does not come within any of the cases sustaining indictments; but to me it appears to be directly within the cases cited holding that an instrument purporting to be void on its face, and not shown to be operative by averment, if genuine, is not the subject of forgery. How is it possible in the nature oí1'things, that it should be others wise? “Void things are as no things.” Was it ever heard of, that the forgery of a nudum pactum, a thing which could *not be declared on or enforced in any way, is yet indictable? It is the forgery of a shadow.
I grant that .on coupling a genuine note, like the one in question, with a consideration, a cause of action would be made. But you must aver the consideration in your declaration, and show it in proof on the trial. It is the subject of *824 a direct issue. In that, sense, here may he the forgery of a piece of evidence, which might be eked out by other evidence, the whole, forming a. mischievous compound. That answer would hold equally in. every case cited ; the void will* the void bill of exchange, the void receipt. We are not to be put. on an exploring expedition for-possible evils. They must be palpable and tangible ; a practicable fraud must be shown in the indictment, so that the finger may be put upon it. That, a false, writing,, purporting to, he, nothing of itself, may be put to some fancied use as an ingredient in the work of mischief, cannot he the criterion of forgery. As Baron Eyre said, in Jones, & Palmer’s case, « (1 Leach, 405,) the instrument, to be the subject, of forgery, must Ci purport, on the face of it, to be good and valid for-I. the- purpose for which it. was created.” This, says Mr.j East, (P, O. 853, note (a,) *“mus:t be understood in respect to the frame or terms, of the instrument or writing itself,”
I agree that. a. man, ignorant of the technical requisites of a special agreement, might be imposed upon by the paper in question. This remark probably embraces a majority of the community in which we five ;- and most likely the very parties named in -the false instrument. In this view, no doubt, the deed of which the, defendant stands convicted, involves all the moral guilt of forgery. He believed; that he had succeeded in fahricating what, purported to be a valid .promissory. But, legal forgery- cannot be made, out i by imputing a possible, or even actual ignorance of the law to the person intended to be defrauded. However dark may he the moral hue of a traireaction, courts of justice can only act upon legal crime, upon criminal breaches of perfect, legal obligation. Had this, paper been used as a token, and thus made the medium of actual fraud b,y the defend-^ ant, he would be punishable- as for a cheat. The instrument, might, in that relative sense, become the subject of an indictment. It here stands alone, and we do not think that, legal forgery can be predicated of such a writing, for the. reason fully established by- authority and principle, that it *825 !s not, on the face of the indictment, of any apparent legal effect
Judgment arrested.