Reed, J.,
([dissenting.) Plaintiff in error Raymond was deputy auditor of the city of Denver, Hadley, deputy treasurer, and they were indicted and convicted of forgery. Joslin & Son, merchants, presented to the city council a bill against the city for -$3.50. The bill was allowed, and a warr *351 rant ordered to be drawn upon the city treasurer for the amount. A warrant was so drawn, which was by Raymond forged or raised to $303.50, which sum was paid from the city treasury. The guilt of the parties was established beyond controversy, — was, in fact, tacitly conceded, — consequently no question of fact is presented. The questions presented are purely legal, the contention being that, under the established facts, the parties were improperly indicted and convicted of the crime of forgery; that.,the indictment and conviction should have been for larceny or embezzlement.
Section 87, Crim. Code, (Gen. St., p. 312, § 775; Mills’ Ann. St., p. 907, § 1258,) is as follows: “ Every person Who shall falsely make, alter, forge, or counterfeit any record or other authentic matter of a public nature, or any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, United States treasury note, or United States bond, bank bill, or note, post note, check or draft, bill of exchange, contract, promissory note, duebill for the payment of money or property, receipt for money or property, power of attorney, any auditor’s warrant for the payment of money at the treasury, county order, or any accountable receipt, or any order or warrant or inquest for the payment of money, or the deliveiy of goods or chattels of any kind, or for the delivery of any instrument of writing or acquittance, release, or receipt for money or goods, or any acquittance, release, or discharge for any debt, account, action, suit, demand, or other thing, real or personal, or any transfer or assurance of money, stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive' or transfer stock or annuities, or to let, lease, dispose of, alien, or convey any goods or chattels, lands or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, or order, or assignment of any bond, writing obligatory, or promissory note for money or other property, or shall counterfeit or forge the seal, or *352 handwriting of another, with intent to damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in or belong to this state or not, or shall utter, publish, pass, or attempt to pass, as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in this state or not, every person so offending shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not less than one year, nor more than fourteen years.” Section 15, art. 3, Amend. Charter of the City of Denver, (Sess. Laws 1885, p. 90,) is the following: “ It shall be the duty of the city treasurer to receive, receipt for, and keep the money of the city, and pay out the same only on warrants drawn by order of the city council, signed by the mayor, countersigned and registered by the city auditor, and attested by the city clerk, under the seal of the corporation.” By section 22, art. 3, of same act, it is provided: “ No money shall be paid out by the city treasurer for any purpose except upon warrants drawn upon him by order of the city council, and signed by the mayor, countersigned and registered bj7 the auditor, and attested by the clerk; and every such warrant shall show on its face the- date of its issue, the date of the order of the city council, to whom and for what purpose issued, and from what fund payable; and all city warrants, except those mentioned in the proviso to this section, shall be payable on demand. No warrant shall issue for a sum greater than that actually due to- the person in whose favor it shall be drawn; nor shall any city warrant draw a greater rate of interest than six per cent per annum.” The following is a copy of the original warrant.
*353 “ Auditor’s Office, City of Denver. No. E. 1,974.
“Treasurer of the City of Denver: Pay to Joslin & Son or order $3.50, three 50 dollars, out of any money in the treasury not otherwise appropriated, for-, and charge the same to miscellaneous fund; and this shall be your voucher. By order of the city council of date Jul. 31, 1890.
“ Issued Aug. 1, 1890.
“ [city seal.] Countersigned by
“ Attest: A. A. McKnight,
“ W. H. Milbttrn, City Auditor.
“ City Clerk. --,
“ —;- Deputy.
“ Deputy. Wolee Londoner,
Mayor.”
The order as forged and changed read: “ Pay to Joslin & Son or order $303.50 three hundred three 50 dollars.” It otherwise remained unchanged. It will be observed that in the warrant as drawn there remained an unfilled blank, the warrant failing to state “the purpose for which it was issued.”
There are 37 errors assigned, many of which we do*not deem it necessary to examine. The indictment contains twelve counts, — six were’ for the forgery, and six for uttering, publishing, and passing the forged warrant. I agree with the conclusion reached in the majority opinion of this court, that no serious error occurred in the appointment of special counsel, the joinder of the different counts in the indictment, the general verdict of the jury upon all the counts, and in the admission and rejection of evidence and the instructions of the court. So far the court is unanimous. Upon the main proposition and question involved, I am compelled to differ. It is held in the majority opinion that the warrant (the blank being unfilled) is not in the form prescribed by the city charter, was void upon its face, and could not be the subject of forgery; and upon this ground, and this alone, the conviction and judgment is reversed.
The learned judge who wrote the opinion, in conclusion, *354 uses the following language: “ I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city or of individuals, when we know that it was the duty of the city officer to'recognize the omission of a statutory requisite necessary to make of the warrant in question a genuine warrant. The alleged warrant in question, being void upon its face, has, in my judgment, no greater legal efficacy than a piece of blank paper. It is not a warrant and cannot be classified as such. It could not be passed, or attempted to be passed, as true and genuine, and is nothing more or less than a false token, if it can be declared that.” With this conclusion it is impossible for me to agree. I do not consider it supported by law nor founded in reason. It is clearly, in my opinion, the result of misapprehension of the law controlling the case,- — ■ a confusion or confounding of the law applicable in a civil case, where the payment of the warrant is resisted for informality, with the law controlling in criminal cases. Although at the very outset in the printed argument of plaintiffs in error is stated, “ Plaintiffs in error were indicted and convicted under section 775, p. 312, Gen. St., for forging and uttering a certain city warrant of the city of Denver,” it is in the opinion treated as an indictment at common law, and numerous common-law authorities are cited and relied upon to sustain the position. The statutory offense is nowhere discussed, nor are we shown to what extent, if at all, the common-law rule is modified by the statute, or the offense taken out of it, or how, if in any respect, our statute differs from those of the states whose decisions are supposed to support the contention.
Of the twenty American cases cited in the main opinion, eight are civil suits, and the balance criminal cases. I cannot conceive how the civil cases cited can have any bearing upon the question whatever. They are suits brought upon irregular warrants against municipal corporations where payment was refused. I concede that such irregularities are, and may be, proper defenses in a civil suit; but the distinc *355 tion drawn between civil actions for the collection of warrants and cases where forgery can be sustained is so marked and well defined that they should never be deemed parallel or analogous. Almost from time immemorial it has been held that a paper need not be enforceable in a court of law to make it the subject of forgery. See Crooke’s Case, 2 Strange, 901; Deakin’s Case, 1 Sid. 142 ; Coate’s Case, 1 Ld. Raym. 737; Sterling’s Case, 1 Leach, 99 ; Coogan’s Case, Id. 449 ; King v. Buttery, 1 Russ. & R. 342; Rex v. Avery, 8 Car. & P. 596 ; Rex v. Barber, 1 Car. & K. 434. See Hawkesworth's Case, 1 Leach, 257. He was indicted for forging a bill of exchange. Objection was taken that it was not stamped pursuant to St. 23, Geo. III., c. 33. That statute not only required the bill to be stamped, but provided “ that a bill without a stamp shall not be pleaded, or given in evidence, or be available in law or equity.” Our statute requires the insertion of for what purpose issued, but it is not declared or made void or invalid by the omission, as in that statute. In that case, counsel for prisoner urged his contention in language nearly identical with that cited above from the majority opinion : “ That it was not a bill of exchange, but a piece of waste paper, incapable of becoming the subject of either fraud or felony; that the party who took it must at the time have known that it was not a legal bill of exchange, or he must have been grossly negligent, the defect being visible upon the face of it.” But Buller, J. overruled the objection, and said that the false instrument had the semblance of a bill of exchange, and was negotiated by the prisoner as such. And, on a case reserved, the judges were all of opinion that the prisoner was properly convicted ; holding that, although it could not be pleaded or given in evidence or be available in law or equity, “ signified only it should not be made use of to recover the debt,” but it did not affect the law of forgery. Shortly after the same question was presented in Lee’s Case, .1 Leach, 258. “ The question underwent much consideration, and was debated by the judges in the course of several terms,” the court holding that it made no *356 alteration in the law of forgery, “but only to provide that the instrument should not be available for the purpose of recovering on it in a court of justice ; ” and they considered that, in order to constitute forgery, it was not necessary that the instrument should be available ; ” and this has been the rule of law down'to the present time, and still is. I do not hesitate to say that I do not believe an authority can be found outside of the opinion in this case, and that of People v. Heed, 1 Idaho, 531, (written by a blacksmith,) where it was held that forgery could not be predicated on an instrument not enforceable at law.
Was the instrument in question at common law void, so that its forgery could not be a legal basis for an indictment, as held in the majority opinion ? The earliest well-considered and authentic case reported at length is King v. Ward, 2 Ld. Raym. 1461, (A. D. 1726.) It appears that the Duke of Buckingham had in store with one Ambrose Newton a large quantity of alum. The certificate was delivered to Ward as agent for purposes of sale. Upon the back of such certificate the following indorsement was forged :

It was objected — First. That it was no forgery at common law; that the information was based upon the common law, and not upon St. 5 Eliz., c. 14. Second. It was insisted that at common law forgery must be of a record or something of a public character; that counterfeiting writings of a private character was not forgery. Third. “ It was further argued that a forgery is not punishable, unless it is to the prejudice of some person.” On the first two points the court held unanimously that the offense was indictable at common law. *357 Passing upon the third point, the court said, (2 Ld. Raym. 1466:) “Upon that statute (5 Eliz., c. 14) no.fact was punishable, but where the offender had carried his fraud into execution, and got the money or goods into his possession, whereby the party defrauded was actually prejudiced. But a man is punishable for a forgery, if it may be prejudicial, though the mischief is prevented by the discovery of the forgery. And that, therefore, is an answer to another objection made by the defendant’s counsel, that it does not appear the Duke of B. was actually prejudiced, it not being averred that the delivery of the alum was avoided in fact by this forged indorsement; for, if he might be prejudiced by it, that makes the forgery an offense, for which an indictment would lie at common law ; as if A. forges a bond in B.’s name, though B. is never obliged to pay the money, an indictment without all question will lie at common law. And for these reasons the court were clear of opinion that this offense, of forging an indorsement on the back of the certificate, whereby the Duke of B. might he defrauded of the alum, was a forgery, for which this information will lie at common law.” And at page 1469: “ But, as to this, the court held it not necessary to lay a publication in the first information, for the forgery was punishable, though the party was not actually prejudiced, if he might be prejudiced by it, and therefore they held it good, though the information did not show the duke was actually defrauded of the alum; and for the same reason there was no necessity to lay that the writing was published.” The conviction was unanimously held good by all the judges of court of king’s bench.
I review this case at some length from the fact that it has been the basis of many more modem decisions upon which counsel rely. It will at once be seen that to take a forged paper out of the operation of the law, as there decided, it must be upon its face so invalid and void as to be worthless; in the language of the judges, “ a writing of no consequence, or. that could prejudice nobody.” “ If he might be prejudiced by it, that makes the forgery an offense for which an indictment *358 would lie at common law.” Following that case was Moffatt's Case, 1 Leach, 431, (A. D. 1787.) Moffat was indicted for forging the.name of the draw;er, and an acceptance on a bill of exchange. It was objected.that the bill of exchange was void. By the statutes of 15 Geo. III., c. 51, and.17 Geo. III., c. 30, it is provided that the place of residence of the payee and of the indorsee should.be stated in the bill and in the indorsement. It was also declared by s.uch statutes that every Mil of exchange and indorsement, failing to comply with such requirements, should be void. The statutes then impose a penalty of from ¿65 to ¿620 upon any person who shall “ utter, publish, or negotiate notes, bills of exchange, etc., contrary to the method above prescribed.” The bill of exchange was held void under the statutes, and that an indictment .for forgery would not lie — it was, a purely statutory proceeding. . Comment is unnecessary. The paper was declared void by statute — was not only absolutely void upon its face, but subjected any party to a penalty who attempted to pass it; and, being absolutely .invalid and worthless, the decision was in keeping with King v. Ward, and has no bearing in this case. In Lyon's Case, 2 Leach, 597, the prisoner was indicted for forging a receipt for money. Held that no conviction could be had, as it was not a receipt for money, within St. 2 Geo. II., c. 2, not complying with the statutory requirements. Mr. Justice Grose said: “ For if he had merely looked at it he must have perceived it was nothing more than waste paper,” The,provisions of the statute are not stated, but it is clear that the statute was similar to that in regard to notes and bills of exchange. King v. Richards, Russ. & R. 193, was an indictment for forging an order for money from the navy department. There was no payee. Held by the judges, Lord Mansfield dissenting, that it was not an, order for money, as no payee was named, and that the indictment could not be sustained. King v. Randall, Russ. & R. 195, (A. D. 1811,) following King v. Richards, that the indictment for forging could .not be sustained on a bill of exchange without a payee,. it having been drawn *359 “ payable to-or order.” Held not to be a bill of exchange. King v. Lyon, Russ. & R. 255, (a. d. 1813,) was an indictment of a power of attorney to receive prize money. The forged power of attorney did not comply in form with the requirements of St. 31 Geo. II., c. 10. Defendant was tried before Lord Ellenborough, and convicted. Baron Graham and Bayley, J., maintained that, not being in form as required by statute, it was void, “ and no person could be guilty of a capital crime in forging it.” But the majority of the court held the conviction right; that it was not a void instrument, though lacking in statutory requirements; “ it might be the subject of a criminal prosecution; that a payment made under it to the use of the petty officer would be good as against him; and that the attorney under it might bring an action for the prize money or execute a release; ” clearly holding that, not being absolutely void for all purposes, the conviction could be maintained. In King v. Pateman, Russ. & P. 475, a note for one pound was raised to ¿640, but the signature was cut off. Held it was not a promissory note under the statute for want of a signature, and the conviction wrong. In King v. Burke, Russ. & R. 496, (A. D. 1822,) the paper was held a mere nullity. It was charged in the indictment as a promissory note. Held, that it was not such in any legal sense; hence that the indictment was not sustained.
It will be observed that in several of the cases cited and relied upon the judgment was based solely upon the statutes, and upon the technical misdescription of the instrument alleged to have been forged, and turned entirely upon a question of criminal pleading. It will also be observed that most of the cases were under statutes minutely designating the requirements of each paper, to render it valid, and declaring them void, when lacking any designated requirement. This I consider a sufficient review of the old English authorities. Among the earlier cases in this country is People v. Shall, 9 Cow. 778, (a. d. 1829.) Shall was indicted for forging the following: “Three months after date I promise to pay Se *360 bastían I. Shall or bearer the sum of three dollars in shoe-making at cash price, the work to be done at his dwelling house near Simon Vrooman, in Minden. David W. Houghtaling. Minden, August 24th, 1826.” He was indicted for forging “a certain promissory note of hand.” There was no averment of any extrinsic matter. Held, it was not a promissory note. The court said: “ It expresses no value received nor any consideration whatever, and no action could be maintained upon it if genuine.” “ It. is utterly void of itself as a common-law contract.” It is characterized as a writing void in itself and so appearing in the indictment. Great reliance is placed upon this case by counsel. One fact is apparently overlooked. It is not the decision of a court of last resort, but of one circuit judge in oyer and terminer. Certain portions of the opinion are cited, which, detached, support the contention of counsel for plaintiff. Carefully examined and taken as a whole, the case is against them. At page 784 it is said: “ I have shown that the paper forged, if genuine, would be a mere nullity for any purpose.” In Bish. Crim. Law, that able author states the following conclusion as the result of his investigation, (2 Bish. Crim. Law, § 538:) “ A writing invalid on its face cannot be the subject of forgery because it has no legal tendency to effect a fraud” The converse of the proposition must be equally true. Any paper that has the legal tend,ency to effect a fraud may be the subject of forgery. It need not effect its purpose; the fraud need not be perpetrated; no one need be injured. If the paper forged is not absolutely worthless for all legal purposes, forgery may be committed. To take it out, it must be, in the language of the judges in Ward’s Case, (2 Lord Raym., supra, j “ a writing of no consequence, that could prejudice nobody; ” contra, “if a party might be prejudiced by it.” This is the test, and this is fully borne out in other sections of Mr. Bishop’s. In section 535 it is said: “The forgery of any writing by which a person might be prejudiced was punishable as forgery at common law. ” Again, same section: “Plainly, however, the writing is'sufficient at common law, *361 if, were it genuine, it would subject the maker to any liabil-. ity, * * * either in the form of an action of assumpsit, * * * or to an action on the case in the nature of deceit, as a false representation made to defraud.” The conclusion is irresistible that the writing must be absolutely void and worthless for all purposes not to be the subject of forgery. See Whart. Crim. Law, §§ 691, 692, 696, 739; Ames Case, 2 Greenl. 365 ; Com. v. Costello, 120 Mass. 358; Foulkes v. Com., 2 Rob. (Va.) 836; State v. Eades, 68 Mo. 150; Jackson v. Weisiger, 2 B. Mon. 214 ; Garmire v. State, 104 Ind. 444; People v. Harrison, 8 Barb. 560; U. S. v. Turner, 7 Pet. 132. Take Mr. Bishop’s definition of “ forgery, ” (1 Bish. Crim. Law, § 572 :) “It is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.” In 2 Greenl. Ev. § 103, it is said: “It [forgery] may be committed of any writing which, if genuine, would operate as the foundation of another man’s liability or the evidence of his right.” In 4 Bl. Comm. 247, and 2 Russ. Crimes, 708, “forgery ” is defined: “ A false making or making malo animo of any written instrument for the purpose of fraud and deceit.” Like all other offenses, intention seems to be an important factor. It must be with the intention of deceiving and perpetrating a fraud; hence the paper forged must be so apparently invalid and worthless upon its face as to negative fraudulent intention, or an indictment will lie.
There is no provision in the statute declaring warrants void for want of the required form. Unless the statute makes the instrument void, an indictment will lie for the forgery, — Thompson v. State, 9 Ohio St. 354; People v. Bibby, (Cal.) 27 Pac. Rep. 781; State v. Eades, supra, — and in many cases it has been held forgery could be predicated upon an instrument declared void by statute, and such is the English doctrine. See cases reviewed above, and 2 Russ. Crimes 750-755.
A brief synopsis of the facts in this case is as follows: The city was legally indebted to Joslin & Son $3.50. A bill was *362 presented, laid before the city council, allowed, and a warrant ordered drawn for the amount. It was the duty of the city auditor to draw the warrant. It was drawn by the deputy, signed by the mayor, countersigned by the auditor, attested by the clerk, and bore the city seal, bore the date of the allowance by the city council, and the date of its issue, and name of the payee. In the ordinary course of business, it should have been delivered to the payee, was the property of Joslin & Son, and should have been placed in their possession. Here was a formal and legal admission of the existing indebtedness of the city, executed with all solemnity by all parties required to participate in it, and more than complying with all the requirements necessary to give it validity and authorize its payment by the treasurer, under section 15, art. 3, of the city charter. It is idle to attempt to maintain that by a trivial, technical- omission in the body of it, accidentally or purposely made by one of the defendants, in a matter that in no way affected Joslin & Son, apd with which they had nothing to do, rendered the paper utterly invalid, void, and worthless for all purposes. By it the liability of the city to pay was, by its own acts, fixed beyond controversy. Had the treasurer refused payment on account of the omission, it being the duty of the city official to make it technically correct, the omission could have been readily supplied; refusing, he could be compelled by a court to insert the clause. The paper was forged and raised to $303.50 and paid, $300 being appropriated by the defendants. There is no question as to the fraudulent intention, and all resulted in success. Regardless of the statute, under the authorities, the conclusion is irresistible that the paper in question was the subject of forgery at common law, and the conviction proper.
In the majority opinion it is held, and much space is devoted to show, that section 22, art. 3, (Charter of Denver,) requiring a warrant drawn upon the treasurer to show on its face “for what purpose issued,” was mandatory. In my view of the case, it is immaterial whether mandatory or directory. The great weight of authority is to the effect *363 that it is directory. It appears to be a provision inserted to assist the city officers in administering affairs and in keeping the accounts, etc. There is nothing in the statute making the validity of a warrant depend upon the insertion of the clause, nor declaring it void or invalid when omitted. In the administration of city affairs, after the allowance of the claim by the city council and the ordering of the warrant, it was the duty of the auditor to draw the warrant. If mandatory at all, it was mandatory upon the city officers. It was a provision in no waj^ affecting the creditor nor the validity of the warrant issued to him as an evidence of indebtedness of the city. It is well settled, upon unquestioned authority, that where the paper alleged to have been forged was the act and paper of the corporation, evidence was admissible to show the usual course of business in such matters. In this case proof was introduced to establish the fact that, if not customary, it was, at least, common, for the city officials to disregard the statutory requirement of inserting the purpose for which the warrant was drawn. The fact that after the warrant was drawn it was countersigned by the city auditor, signed and attested by the city clerk, and the seal of the city attached, signed and attested by the may- or, and paid by the treasurer, conclusively shows that the statutory requirement was disregarded in the transaction of business, and that the officers guilty of the offense knew that in the ordinary course of business it would be paid with the blank unfilled. In other words the officers guilty of the offense, instead of drawing a void, invalid paper, drew one valid and regular, known to them to be so — one, as subsequent payment proved, capable of fully effecting the fraud contemplated.
It is obvious that neither the other city .official nor the treasurer regarded that clause as mandatory, and it was persistently disregarded. There is one section of the charter entirely overlooked in the principal opinion, neither cited nor referred to, (section 15, Id. “ City Treasurer.”) By it, it will be seen the treasurer was authorized to pay out the city *364 money “ only on warrants drawn by order of the city council, signed by the mayor, countersigned and registered by the city auditor, and attested by the city clerk under the seal of the corporation.” Here we have clearly and fully stated all that is necessary to the validity of the warrant to authorize its payment by the treasurer. This section is in no way referred to in section 22, where the same requirements are repeated and further ones added, among which is “ the purposes for which drawn.” I am at a loss to know why section 15 was entirely ignored in the principal opinion, being one specially relating to the city treasurer, by name and designation, and preceding the one relied upon in the same article. We have, in effect, the reversal of a proper conviction on what to me appears to be a very trifling, frivolous, and technical ground to shield parties, confessedly guilty, from the consequences of their crime. Law is supposed to be a science based upon reason and common sense. Such defenses cannot, morally, appeal to any court; legally, I have attemped to show their inadequacy. Where there is doubt in regard to the guilt of a party, and whether the conviction was warranted by the facts, courts will hesitate and construe all questions favorably to the defendant. It is necessary to protect the innocent from punishment — but where parties are notoriously guilty, and confessedly so under such circumstances as are presented in this case, courts should not exhaust their energy and ingenuity in magnifying a trivial legal technicality into a ground for reversal to shield culprits from well-merited punishment. To a court or layman the proposition is this: The officers of a corporation, having willfully, intentionally, and persistently violated a statute obligatory only upon themselves, leave out a single clause known to be unnecessary to secure the money, secure the money by the forgery, then set up such willful violation of a statute, by them declared to be mandatory, to defeat a conviction for a crime established beyond question.
This court has in this case succeeded in doing what no other court, as far as I am informed ever attempted — allow *365 ing a defendant, guilty of two admitted frauds, to set one off as a defense to the other and neutralize both. It does not appear to have been thought of or tried as an experiment, as far as I can find, since Morton’s Case, 2 East, C. L. 955, 956; 1 Leach, 258, (a. d. 1783.) The court there thought it could not he done. The judges said: “ It would be a strange defense to admit in a court of justice that, because a man had forged a stamp, he ought to be excused for having forged the note itself, which would be setting up one fraud in order to protect him from punishment due to another.”, In this case the experiment appears to have been successful. It is not, as I have attempted to show, necessary to place an affirmance of the judgment upon the ground last indicated. If it were necessary, I should not hesitate to declare that a wanton violation of a statute could not be interposed by the same parties to shield them from punishment for a criminal offense.
It is conceded that the parties were guilty of larceny or embezzlement of the public funds, and it is urged that the prosecution was misconceived, — was for the wrong offense; that it should have been for larceny. It is only necessary to say that the two are separate and distinct offenses, each in its way complete, and that prosecution for one cannot take the place of, nor be substituted for, the other; and that a party guilty of two crimes in the same transaction, for either or both of which a prosecution would lie, cannot usually make his election. So far T have followed the reasoning, grounds, and argument in the principal opinion, in which only the forgery as a common-law crime is discussed. In the legal argument and brief of counsel for plaintiffs in error it is asserted : “ The plaintiffs in error were indicted and convicted under section 775, p. 312, Gen. St., for forging and uttering a certain warrant, ” etc. Neither the statutory offense of forgery, nor the uttering of forged paper, is anywhere discussed in the principal opinion. They are “ sponged ” out, and then ignored, by this hasty paragraph: “ In the briefs, nor in the oral argument, was our attention called to the statute ; and we *366 are warranted in assuming that the attorneys on behalf of the people did not believe its provisions were broad enough to cover the crime of forgery, based upon an absolutely void instrument, void upon its face. ” Three times upon one page the learned judge reiterates the statement that. the warrant in question was absolutely void, — void upon its face, etc. This_ rests entirely upon an assumption. No counsel in argument had the temerity to claim that it was “ absolutely void,”— void upon its face and worthless. To so assert is to assume it void and worthless for all purposes, and no authority has been, or can be, produced to warrant the assumption. I maintain, backed by all respectable authority, that it was not only not void for all purposes, but was valid for all purposes. At any rate, having forged and uttered it and secured the proceeds, it was an adequate basis for an indictment and conviction. The statutory question on an indictment based upon the statute cannot be thus summarily disposed of. No matter what inference the court may have drawn from the conduct of counsel regarding their view of the breadth of the statute, it becomes the duty of the court to examine it and determine its breadth. It, as far as the crime of forgery, as known to the common law, is concerned, is much broader than the common law. Another fact will be observed that takes the statutory crime of forgery entirely out of the domain of the common law. The statute makes the uttering, publishing, and passing of a paper, “ knowing the same to be false, altered, forged, of counterfeited, with intent to prejudice, damage, or defraud any person or persons, body politic or corporate, forgery.” The indictment in six counts charges the uttering, publishing, and passing, and the uncontradicted evidence not only establishes the fact, but the further fact that by the same conspiracy, by forgery and the payment of forged warrants, the robbery of the people through the city treasury was unlimited in extent. In the early statute of Great Britain, and perhaps at common law, the forging and uttering — the making of the false paper and the successful perpetration of the fraud by receiving the proceeds — were *367 necessary to convict. Shortly after the two wore separated, and each made a distinct offense subjecting to 'punishment; but while made separate and distinct offenses, so that either might be punished alone, where the facts warranted, they might be laid in the same indictment, and a conviction be had for either or both; but our statute makes both the same offense, and the offender can be legally convicted of forgery on either. The language of our statute is, section 87, “ Every person who shall falsely make, alter, forge, or counterfeit,” etc., “ or shall utter, publish, pass, ” etc., “ knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud,” etc., “ every person so offending shall be deemed guilty of forgery, and upon conviction,” etc. It is strange that this important feature should not have been considered in the main opinion. By the disjunctive “ or ” separating the former part of the section from the latter, though both offenses are forgery, they are separate and distinct crimes. The party uttering need not be the party who forged. To complete and perfect the offense, it is only necessary — first, that the paper should be forged or altered; second, that the party passing it knew it to be false, forged, and fraudulent; third, that he should utter it or attempt to utter it, with intent to damage or defraud, etc. In regard to the guilty knowledge and the successful perpetration of the crime by uttering and receiving the money there is no question; hence, regardless of the form or regularity of the paper, the offense of forgery, by the uttering alone, was complete. The successful perpetration of the crime by uttering the paper and receiving the proceeds eliminates every question discussed in the main opinion, and warranted the conviction, regardless of the question upon which the conviction is reversed. I am at a loss to know how, in view of the facts of this case uncontradicted and conceded, the following paragraph could have found a place in the main opinion, unless intended to be satirical: “ I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city or individuals, when we know that it was the duty of the city officer to recognize the omission of a statutory requi *368 site necessary to make the warrant in question a genuine warrant.” What are we to infer from the language used? It may be inconceivable to my learned associate, but that does not alter the fact. The criminal and moral turpitude of high city officials intrusted with millions of the people’s money was not supposable, hardly conceivable, until the facts were established; but, when the crimes of forgery and the embezzlement of the people’s money was proved, it is not supposable that their moral rectitude and sense of duty were so great as to overcome the criminal intention to get the money, and compel them to “ recognize the omission of a statutory requisite.” If he means that the guilty parties were so imbued with the sense of duty, and so controlled bj" principles of morality, as city officers, as to render the overlooking of the omission impossible, then I can only say the inference is contradicted by every page of the record, and that it is not astonishing or impossible that persons who could perpetrate forgery and grand larceny should fail to “ recognize the omission of a statutory requisite; ” and, although he was “ unable ,to conceive how the warrant in question could possibly operate to the prejudice of the city or individuals,” I can only say it does not depend upon his ability", comprehension, or want of comprehension. The fact remains that the identical warrant did prejudice the city, and through it individuals, to the extent of $300, and like warrants, probably, to the extent of as many thousands.
My conclusions are — First, that the crime of forgery at common law was fully established, and the conviction right; second, that the crime of forgery under the first part of our statute was fully established, and the conviction right; third, that the “ uttering ” by our statute was forgery, regardless of the form of the paper, and regardless of the questions discussed in the majority opinion, and the conviction right; fourth, that, if confessed criminals and public robbers are to go unpunished under the law, facts, and circumstances of this case, all law for the punishment of crime should be repealed, and courts abolished.

.Reversed.